**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION – SINGLE SPORT/SINGLE SCHOOL (FOOTBALL) | MDL Docket No. 2492 <br><br> Master Docket No. 1:16-cv-08727 <br><br> Member Case Docket No. 1:16-cv-09980 |
| **This Document Relates to:** <br><br> JAMIE RICHARDSON, individually and on behalf of all others similarly situation, <br><br>     Plaintiff, <br><br>             v. <br><br> SOUTHEASTERN CONFERENCE and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, <br><br>     Defendants. | Judge John Z. Lee <br><br> Magistrate Judge M. David Weisman |

**MEMORANDUM OF DEFENDANT
SOUTHEASTERN CONFERENCE IN SUPPORT OF MOTION TO DISMISS
<u>PURSUANT TO FED. R. CIV. P. 12(b)(2) AND 12(b)(6)</u>**

Date: December 14, 2017

Robert W. Fuller (N.C. Bar No. 10887)
 rfuller@robinsonbradshaw.com
Stephen M. Cox (N.C. Bar No. 23057)
 scox@robinsonbradshaw.com
Pearlynn G. Houck (N.C. Bar No. 36364)
 phouck@robinsonbradshaw.com
Richard C. Worf (N.C. Bar No. 37143)
 rworf@robinsonbradshaw.com
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

# TABLE OF CONTENTS

**Page**

TABLE OF CASES AND AUTHORITIES .................................................................... ii

I.     FACTS RELEVANT TO 12(b)(2) Motion ......................................................... 1

II.    ALLEGATIONS OF THE COMPLAINT ........................................................ 3

III.   ARGUMENT – 12(b)(2) .................................................................................. 4

     A.    Indiana lacks general jurisdiction over the SEC .................................... 6

     B.    Indiana also lacks specific jurisdiction over the SEC in this action ...................... 8

     C.    Plaintiff's claims should be dismissed for lack of personal jurisdiction without delay .......................................................... 11

IV.   ARGUMENT – 12(b)(6) .................................................................................. 12

     A.    Plaintiff's claims are barred by the statutes of limitations ................................... 12

         1.    Negligence ................................................................... 14

         2.    Fraudulent Concealment Claim ................................... 16

         3.    Implied Contract and Unjust Enrichment Claims ................................... 17

     B.    Plaintiff's fraudulent concealment claims also fail under Rule 9(b) .................. 18

     C.    Plaintiff fails to state a claim for breach of an implied contract ......................... 20

     D.    Plaintiff fails to state a claim for unjust enrichment ........................................... 22

V.    CONCLUSION ............................................................................................... 24

# TABLE OF CASES AND AUTHORITIES

**Page**

**CASES**

*AC v. Baker*, 622 So. 2d 331 (Ala. 1993) .................................................................. 17

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014) ............................................................................................................. 5, 6, 9

*Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322 (Fla. 5th Dist. Ct. App. 2007) ......................... 23

*Atkins v. City of Chicago*, 631 F.3d 823 (7th Cir. 2011) ................................................ 22

*Auburn Univ. v. IBM*, 716 F. Supp. 2d 1114 (M.D. Ala. 2010) ........................................... 17

*Avis v. Heilman*, 876 So. 2d 1111 (Ala. 2003) ......................................................... 23

*Beck v. Lazard Freres & Co.*, 175 F.3d 913 (11th Cir. 1999) ........................................... 17

*Bedtow Group II v. Ungerleider*, 684 Fed. App'x. 839 (11th Cir. 2017) ................................. 18

*Bell Atl. v. Twombly*, 550 U.S. 544 (2007) ..................................................... 12, 21, 22

*Berger v. NCAA*, 643 F.3d 285 (7th Cir. 2016) ......................................................... 24

*Berisford v. Jack Eckerd*, 667 So. 2d 809 (Fla. Dist. Ct. App.1995)..................................... 14

*Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599 (7th Cir. 2009) ................................. 22

*Board of Regents v. NCAA*, 468 U.S. 85 (1984) ........................................................ 24

*Borsellino v. Goldman Sachs,* 477 F.3d 502 (7th Cir. 2007)............................................. 18

*Bristol-Myers Squibb Co. v. Superior Court,* 137 S. Ct. 1773 (2017)...................................... 6

*Broyles v. Brown Eng'g*, 151 So. 2d 767 (Ala. 1963) ................................................... 21

*Brugiere v. Credit Commerciale France*, 679 So. 2d 875 (Fla. 1st Dist. Ct. App. 1996) .......... 16

*Burr v. Philip Morris*, 2012 WL 5290164 (M.D. Fla. Sept. 28, 2012)..................................... 16

*Bush v. Goldman Sachs*, 544 So. 2d 873 (Ala. 1989).................................................... 21

*Carter v. Lowe's Home Ctrs.*, 954 So. 2d 734 (Fla. Ct. App. 2007) ..................................... 14

*Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World*, 230 F.3d 934 (7th Cir. 2000) .......................................................................... 9

*Chandiwala v. Pate Constr.*, 889 So. 2d 540 (Ala. 2004) ........................................................ 14

*Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757 (7th Cir. 2008) ......................... 5

*Commerce P'ship v. Equity Contracting*, 695 So. 2d 383 (Fla. 4th Dist. Ct. App. 1997) ..... 21, 23

*Creative Demos v. Wal-Mart*, 142 F.3d 367 (7th Cir. 1998) ...................................................... 23

*Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) ................................................................ 6, 7, 8

*Daniel J. Hartwig Assoc., Inc. v. Kanner*, 913 F.2d 1213 (7th Cir. 1990) ................................... 5

*Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002) ................................................................. 14, 18

*Digitech Computer v. Trans-Care*, 583 F. Supp. 2d 984 (S.D. Ind. 2008) ................................. 20

*DiLeo v. Ernst & Young,* 901 F.2d 624 (7th Cir. 1990) .............................................................. 19

*Donatelli v. National Hockey League*, 893 F.2d 459 (1st Cir. 1990) ........................................... 8

*Felland v. Clifton*, 682 F.3d 665 (7th Cir. 2012) ....................................................................... 10

*GCIU-Employer Ret. Fund v. Goldfarb*, 565 F.3d 1018 (7th Cir. 2009) ................................. 9, 10

*Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855 (N.D. Ill. 2016) ............................................ 8

*Hairston v. Pacific 10 Conf.*, 101 F.3d 1315 (9th Cir. 1996). .................................................... 22

*Hancock-Hazlett Gen. Const. v. Trane*, 499 So. 2d 1385 (Ala. 1986) ....................................... 23

*Health Mgmt. Professionals, Inc. v. Diversified Bus. Enterprises,* 882 F. Supp. 795
  (S.D. Ind. 1995) ....................................................................................................................... 5

*Hess v. Philip Morris*, 175 So. 3d 687 (Fla. 2015) .................................................................... 17

*Imagenetix v. Walgreen*, 2012 WL 1231067 (N.D. Ill. Apr. 12, 2012) ....................................... 18

*In re Engle Cases*, 2012 WL 12904243 (M.D. Fla. Nov. 26, 2012) ................................. 14, 15, 16

*In re NCAA Student-Athlete Concussion Injury Litigation*, 314 F.R.D. 580 (N.D. Ill.
  2016) ...................................................................................................................................... 12

*In re Parmalat Securities Litig.*, 412 F. Supp. 2d 392 (S.D.N.Y. 2006) ............................... 12, 13

*In Re StarLink Corn Products Liability Litig.*, 211 F. Supp. 2d 1060 (N.D. Ill. 2002) ... 12, 13, 20

*In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 164 F. Supp. 3d 1040 (N.D.
  Ill. 2016) ................................................................................................................................. 10

*In re Testosterone Replacement Therapy Products Liab. Litig.*, 136 F. Supp. 3d 968 (N.D. Ill. 2015) ................................................................................................. 4, 5

*In re Testosterone Replacement Therapy Products Liab. Litig.,* 159 F. Supp. 3d 898 (N.D. Ill. 2016) .................................................................................................... 19

*Independent Trust v. Stewart Servs.*, 665 F.3d 930 (7th Cir. 2012)...................................... 12, 13

*Ishler v. CIR*, 442 F. Supp. 2d 1189 (N.D. Ala. 2006) ................................................. 17

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984).................................................. 9

*Kipp v. Ski Enterprise Corp. of Wisconsin*, 783 F.3d 695 (7th Cir. 2015) .................................... 6

*Klein v. DuPuy*, 506 F.3d 553 (7th Cir. 2007) ............................................................. 17

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998)........................... 11

*Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19 (D.D.C. 2015) ...................................... 7

*Marshall v. ESPN*, 111 F. Supp. 3d 815 (M.D. Tenn. 2015) *aff'd*, 668 Fed. App'x. 155 (6th Cir. 2016) .......................................................................................... 24

*McCollough Enter. v. Marvin Windows & Doors*, 2010 WL 5014670 (S.D. Ala. 2010) ........... 17

*McCormack v. NCAA*, 845 F.2d 1338 (5th Cir. 1988)..................................................... 24

*McWilliams v. Union Pacific Res.*, 569 So. 2d 702 (Ala. 1990).......................................... 14

*Medical Data Sys. v. Coastal Ins. Group,* 139 So. 3d 394 (Fla. Ct. App. 2014)....................... 14

*Medical Jet v. Signature Flight Support*, 941 So. 2d 576 (Fla. 4th Dist. Ct. App. 2006) ........... 18

*Merle Wood & Assoc. v. Trinity Yachts*, 857 F. Supp. 2d 1294 (S.D. Fla. 2012)...... 18, 20, 21, 23

*Micro Data Base Sys. v. Dharma Sys.*, 148 F.3d 649 (7th Cir. 1998) ........................................ 22

*Miller v. Mobile Cty. Bd. of Health*, 409 So. 2d 420 (Ala. 1981)............................................. 15

*Mobile Anesthesiologists Chicago v. Anesthesia Assoc. of Houston Metroplex*, 623 F. 3d 440 (7th Cir. 2010) ..................................................................................... 9

*Mohammed v. Uber Technologies*, 237 F. Supp. 3d 719 (N.D. Ill. 2017) ............................... 5, 6, 9

*N. Grain Mktg., LLC v. Greving*, 743 F.3d 487 (7th Cir. 2014) .................................................. 8

*Norex Petroleum Ltd. v. Blavatnik*, 48 Misc. 3d 1226(A), 22 N.Y.S.3d 138 (N.Y. Sup. Ct. 2015) ..................................................................................................... 7

*O'Bannon v. NCAA*, 802 F.3d 1049 (9th Cir. 2015)..................................................... 24

*Ogden Martin Sys. of Indianapolis v. Whiting*, 179 F.3d 523 (7th Cir. 1999)............................ 13

*Parish v. City of Elkhart*, 614 F.3d 677 (7th Cir. 2010) ................................................ 13

*Policastro v. Myers*, 420 So. 2d 324 (Fla. 4th Dist. Ct. App. 1982)........................................... 21

*Purdue Research Found. v. Sanofi–Synthelabo*, 338 F.3d 773 (7th Cir. 2003)...................... 5, 10

*Raie v. Cheminova*, 336 F.3d 1278 (11th Cir. 2003) .......................................... 14, 15

*RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272 (7th Cir. 1997) ................................. 10

*Richter v. INSTAR Enters. Int'l*, 594 F. Supp. 2d 1000 (N.D. Ill. 2009) ...................................... 5

*Rush v. Savchuk*, 444 U.S. 320 (1980)..................................................................... 9

*Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37 (D.D.C. 2015)........................................ 7

*Sears v. Likens,* 912 F.2d 889 (7th Cir. 1990) ............................................................ 19

*Senne v. Kan. City Royals Baseball Corp*, 105 F. Supp. 3d 981 (N.D. Cal. 2015) ...................... 8

*Smith v. Nat'l Sec. Ins.*, 860 So. 2d 343 (Ala. 2003) ................................................... 15

*Steiger v. Huntsville City Bd. of Educ.,* 653 So. 2d 975 (Ala. 1995)............................... 20, 21, 22

*Swafford v. Schweitzer*, 906 So. 2d 1194 (Fla. 4th Dist. Ct. App. 2005) .................................... 23

*Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010).................................................... 10

*Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7 (D.D.C. 2014)....................... 7, 8

*Travelers Ins. v. Rogers*, 579 N.E.2d 1328 (Ind. Ct. App. 1991) ................................. 20

*uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421 (7th Cir. 2010)............................................. 6

*Utilities Bd v. Shuler Bros.*, 138 So. 3d 287 (2013)............................................ 14, 17

*Vicom v. Harbridge Merchant Servs.*, 20 F.3d 771 (7th Cir. 1994) ............................................ 19

*Waldrup v. Hartford Life Ins.*, 598 F. Supp. 2d 1219 (N.D. Ala. 2008)................................ 15, 16

*Welborn v. Snider*, 431 So. 2d 1198 (Ala. 1983)................................................... 21

*Wigod v. Wells Fargo Bank*, 673 F.3d 547 (7th Cir. 2012) ...................................... 19

*Wilson v. Humphreys (Cayman)*, 916 F.2d 1239 (7th Cir. 1990) *cert. denied,* 499 U.S. 947 (1991) ............................................................................................. 5

## STATUTES

28 U.S.C. § 1407 ............................................................................................... 1, 4, 11, 13

Ala. Code § 6-2-3 ............................................................................................................... 15

Ala. Code § 6-2-34 ............................................................................................................. 17

Ala. Code § 6-2-38 ..................................................................................................... 14, 16

Ala. Code § 10A-17-1.07 .......................................................................................... 1, 2, 7

Ala. Code § 10A-17-1.08 ............................................................................................... 2, 7

Fla. Stat. § 95.11 ..................................................................................................... 14, 16, 17

Fla. Stat. Ann. § 95.031 ......................................................................................... 14, 16, 17

Ind. Code § 34-11-4-2 ...................................................................................................... 13

## OTHER AUTHORITIES

1 Dan B. Dobbs, *Law of Remedies: Damages–Equity–Restitution* § 4.2(3) (2d ed. 1993) ......... 24

18 Ind. Law Encyc., Limitation of Actions § 7 ............................................................... 14

Restatement (2d) Conflicts of Laws § 221 ..................................................................... 22

Plaintiff Jamie Richardson ("Richardson") alleges in his complaint that he played football at the University of Florida, located in Gainesville, Florida, from 1994 to 1996. Compl. ¶ 78. The complaint also alleges that Florida was and is a member of the defendant Southeastern Conference ("SEC" or the "Conference"), which is located in Birmingham, Alabama. *Id*. ¶ 10. Richardson currently resides in Georgia. *Id*. ¶ 9. Nevertheless, on August 31, 2016, Richardson filed this action against the SEC in the United States District Court for the Southern District of Indiana, from which it was transferred to this Court by the Judicial Panel for Multidistrict Litigation pursuant to 28 U.S.C. §1407. Because the SEC is not subject to personal jurisdiction in Indiana—either general or specific—the SEC should be dismissed as a defendant pursuant to Federal Rule of Civil Procedure 12(b)(2).

In addition, Plaintiff's attempt to state four claims against the SEC— (i) negligence, (ii) fraudulent concealment, (iii) breach of an implied contract, and (iv) unjust enrichment—fails under Fed. R. Civ. P. 12(b)(6). All four claims are time barred. In addition, Plaintiff's fraudulent concealment claims fail under Fed. R. Civ. P. 9(b), and his breach of implied contract and unjust enrichment claims fail substantively under Rule 12(b)(6). For each of these independent reasons, even if jurisdiction were present, Plaintiff's complaint against the SEC would be subject to dismissal.

## I.     FACTS RELEVANT TO 12(b)(2) MOTION

The SEC is an Alabama unincorporated association that directs and organizes interscholastic athletic competitions, conducts tournaments, and prescribes eligibility rules for contestants. Womack Decl. ¶ 3.[1] Under Alabama Code § 10A-17-1.07, the SEC "is a legal entity separate from its members for the purposes of determining and enforcing rights, duties, and

---

[1] The SEC files the Declaration of Mark Womack, attached herewith as Exhibit 1, to set forth factual background relevant to the Rule 12(b)(2) motion.

liabilities in contract and tort." The SEC may institute and defend judicial proceedings in its own name. *Id.* § 10A-17-1.08.

The SEC has fourteen member institutions: Auburn University, Louisiana State University, Mississippi State University, Texas A&M University, University of Alabama, University of Arkansas, University of Florida, University of Georgia, University of Kentucky, University of Mississippi, University of Missouri, University of South Carolina, University of Tennessee, and Vanderbilt University. Womack Decl. ¶ 4. The University of Arkansas and the University of South Carolina joined the SEC in or about 1991. Texas A&M and the University of Missouri joined the SEC in 2012. *Id.* The remaining ten schools have been members of the SEC since it was founded in 1932. *Id.* None of the member institutions are now or have ever been located in Indiana. *Id.* The SEC does not do business in or have an agent for service of process in Indiana. *Id.* ¶ 5.

The SEC has one office, with approximately 40 employees, which has been located in Birmingham, Alabama at all times since 1948. *Id.* ¶¶ 3 & 7(a). The SEC Commissioner and his/her staff have full responsibility for the day-to-day operations of the Conference. *Id.* ¶ 3. The SEC has never had any office in Indiana or organized or conducted any athletic competition in Indiana. *Id.* ¶¶ 5 & 8. From the formation of the Conference in 1932, to the best of anyone's knowledge, all tournaments, games, and competitions organized by the SEC have been conducted in one of the eleven states in which the SEC has a member institution.[2] *Id.* ¶ 8.

The SEC is a member conference of the defendant NCAA, which currently has its principal offices located in Indianapolis, Indiana. From 1994 to 1996, however, when Richardson played football at Florida, the NCAA's principal (and only) offices were located near Kansas

---

[2] Those states are South Carolina, Georgia, Florida, Alabama, Tennessee, Kentucky, Mississippi, Louisiana, Arkansas, Missouri, and Texas.

City, Kansas. The NCAA did not move its offices to Indianapolis until 2000. *Id*. ¶ 7(b). In any event, the SEC has never been located in Indiana, and Richardson does not allege any litigation-specific contacts of the SEC with Indiana. During the period of Richardson's enrollment, Florida never played a football game in Indiana. *Id*. ¶ 9. Simply put, Indiana has no connections at all to this lawsuit.

## II.   ALLEGATIONS OF THE COMPLAINT

Not surprisingly in light of this factual background, the complaint contains no specific factual allegations to support the assertion of personal jurisdiction over the SEC. Instead, the complaint conclusorily alleges in paragraph 10 that the SEC "conducts business throughout this District, the State of Indiana, and the United States" and in paragraph 13 that "Defendants . . . conduct significant business in this District, including establishing consumer and business contracts here and because the unlawful conduct alleged in the complaint occurred in, was directed at, and/or emanated in part from this District." These allegations are insufficient both legally and factually, as explained below. They are also incorrect, as explained in the Womack Declaration.

Even though he alleges no basis for assertion of personal jurisdiction over the SEC, Richardson attempts to state four claims against the SEC: (i) negligence, (ii) fraudulent concealment, (iii) breach of an implied contract, and (iv) unjust enrichment. Compl. ¶¶ 91-106, 107-116, 127-133 & 141-145. Richardson generally asserts that the SEC failed to regulate, supervise, and monitor the football program of the University of Florida, and failed to educate and warn student-athletes of the risks of concussions. After six pages of allegations citing public statements and published studies concerning head injuries, *id*. ¶ 34-59, the complaint alleges, in a conclusory manner, that the "NCAA, SEC, and University of Florida . . . ignored [what they allegedly knew to be harmful effects of TBI] and failed to institute any meaningful methods of

warning and/or protecting student-athletes [because] college football was simply too profitable to be put at risk." *Id.* ¶ 60. For the next four pages, the complaint makes the same allegations concerning purported failures of the SEC and the University of Florida to implement treatment standards and concussion protocols included in dozens of other complaints in the actions consolidated in this Court. *Id.* ¶¶ 61-77. The complaint has no specific facts to support these conclusory allegations. Instead, Plaintiff paints with a broad brush, implausibly asserting that for decades, from 1952 to 2010, nothing was done to address the potential risks of head injuries to University of Florida football players. *Id.* ¶ 85.

The complaint's allegations concerning the Plaintiff himself are equally vague and unspecific. It asserts that "from 1994 to 1996 . . . [Plaintiff] recalls suffering from several concussions while playing football at University of Florida." *Id.* ¶ 78. According to the complaint, "Defendants failed to adopt or implement adequate concussion management safety protocols or return to play guidelines during his time on the University of Florida's football team," so that "every time Plaintiff suffered a concussive or sub-concussive hit, he would quickly be returned to the field of play [and] [a]s a result . . . now suffers from severe daily headaches, memory loss, dizziness, and other debilitating issues." *Id.* ¶¶ 81-84.

After boilerplate class allegations, *id.* ¶¶ 85-90, the complaint repeats the allegations summarized above in an attempt to state causes of action against the SEC for negligence, *id.* ¶¶ 91-106, fraudulent concealment, *id.* ¶¶ 107-116, breach of implied contract, *id.* ¶¶ 127-133, and unjust enrichment, *id.* ¶¶ 141-145.

### III.  ARGUMENT – 12(b)(2)

When actions are transferred pursuant to § 1407, the transferee court has personal jurisdiction only if "the originating, transferor courts would have jurisdiction." *In re Testosterone Replacement Therapy Products Liab. Litig.*, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015). In a

4

diversity case such as this, the transferor court has personal jurisdiction only if "a court of the state in which it sits would have such jurisdiction." *Id.* (citing *Citadel Grp. Ltd. v. Washington Reg'l Med. Ctr.*, 536 F.3d 757, 760 (7th Cir. 2008)). Determining whether personal jurisdiction exists in a particular case is a two-step inquiry: first, the State's long-arm statute must authorize jurisdiction, and second, the exercise of such jurisdiction must be permissible under the Due Process Clause. *Daniel J. Hartwig Assoc., Inc. v. Kanner,* 913 F.2d 1213, 1216 (7th Cir. 1990) (describing two-step jurisdictional inquiry). Because Indiana's long-arm statute has been held to extend jurisdiction to the full limits of due process, however, "the two inquiries collapse into one." *Health Mgmt. Professionals, Inc. v. Diversified Bus. Enterprises,* 882 F. Supp. 795, 797 (S.D. Ind. 1995), citing *Wilson v. Humphreys (Cayman)*, 916 F.2d 1239, 1243 (7th Cir. 1990) *cert. denied,* 499 U.S. 947 (1991). Thus, this Court may exercise jurisdiction over the SEC if it would be constitutionally permissible for an Indiana court to do so.

The plaintiff has the burden of proof to establish personal jurisdiction. *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014). Here, the complaint completely fails to meet that burden because the conclusory statements in paragraphs 10 and 13 "'amount only to vague generalizations or unsupported allegations [and thus] are not enough to support personal jurisdiction.'" *Mohammed v. Uber Technologies*, 237 F. Supp. 3d 719, 733 (N.D. Ill. 2017) (John Z. Lee, J.) (quoting *Richter v. INSTAR Enters. Int'l*, 594 F. Supp. 2d 1000, 1016 n.6 (N.D. Ill. 2009)). In any event, "once the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction, the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue Research Found. v. Sanofi–Synthelabo*, 338 F.3d 773, 783 (7th Cir. 2003).

Personal jurisdiction may be either specific or general. "Specific jurisdiction is available for a suit that arises out of the forum-related activity" of the defendant, while general jurisdiction "is proper only in the limited number of fora in which the defendant can be said to be 'at home.'" *Advanced Tactical Ordnance*, 751 F.3d at 800. To the extent that the complaint even attempts to allege a basis for personal jurisdiction, it appears to rely on general jurisdiction because Plaintiff alleges no facts to support contacts with Indiana specific to this lawsuit. Under either test, however, there is no basis for assertion of personal jurisdiction over the SEC.

**A.**     **Indiana lacks general jurisdiction over the SEC.**

Unlike specific jurisdiction, which requires that a defendant have sufficient lawsuit-related contacts with the forum state, general jurisdiction gives a court the power to "hear any and all claims against" the defendant. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). The scope of general jurisdiction under the Due Process Clause is exceedingly narrow, and requires connections with a state that are "so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Id.* at 754; *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017) (reinforcing the holding in *Daimler*); *Advanced Tactical Ordnance*, 751 F.3d at 800 (general jurisdiction is "proper only in the limited number of fora in which the defendant can be said to be 'at home.'"); *see also Kipp v. Ski Enterprise Corp. of Wisconsin*, 783 F.3d 695 (7th Cir. 2015) (no general jurisdiction even though ski resort attended trade shows and targeted customers in forum); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (no general jurisdiction even though GoDaddy marketed and sold domain name registrations and had numerous customers in forum).

As noted above, the complaint alleges no facts sufficient to support general jurisdiction over the SEC. *See Mohammed*, 237 F. Supp. 3d at 733. There is no factual basis for the claim that the SEC "does business" in Indiana. Even if there were, "doing business" no longer suffices

6

to support general jurisdiction. *Daimler*, 134 S. Ct. at 760-61. General jurisdiction does not exist in a state even if "a corporation engages in a substantial, continuous, and systematic course of business." *Id.* at 760-61 and n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."). Thus, "only a limited set of affiliations with a forum will render a defendant amenable to all-purpose jurisdiction there." *Id.* at 760. For an individual, that place is his or her domicile; for a corporation, it is "the place of incorporation and principal place of business." *Id.* "Those affiliations have the virtue of being unique [and] easily ascertainable, [affording] plaintiffs recourse to at least one clear and certain forum in which a corporate defendant may be sued on any and all claims." *Id.*

The SEC is an unincorporated association with independent legal existence and the power to sue and be sued. Alabama Code § 10A-17-1.07 & 1.08. Courts have held that, just like individuals and corporations, unincorporated associations are subject to general jurisdiction only where they are "at home," which is where their principal place of business is located. *See Livnat v. Palestinian Auth.*, 82 F. Supp. 3d 19, 28 (D.D.C. 2015) (holding with respect to unincorporated association that "[w]hile the Supreme Court did not enumerate paradigm all-purpose forums for other types of organizations, the Supreme Court never suggested that this particular inquiry would be any different for a defendant that was neither an individual nor a corporation."); *Safra v. Palestinian Auth.*, 82 F. Supp. 3d 37, 46 (D.D.C. 2015) (same); *Norex Petroleum Ltd. v. Blavatnik*, 48 Misc. 3d 1226(A), 22 N.Y.S.3d 138 (N.Y. Sup. Ct. 2015) (holding that *Daimler* applied to unincorporated association of companies formed by Russian billionaires); *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 12 n.6, 14-15 (D.D.C. 2014) (applying *Daimler* to non-sovereign government of Northern Cyprus, analogizing it to an unincorporated association).

Under these principles, Indiana does not have general jurisdiction over the SEC because the SEC has only sporadic contacts with Indiana, does not do business there, does not organize sports competitions there, and has no presence there. Womack Decl. ¶¶ 7-9. The SEC is certainly not "at home" in Indiana. It has been based in Alabama for almost 70 years. *Id.* ¶ 7(a). Thus, even if the SEC did business in Indiana, which it does not, that would not be sufficient to establish general jurisdiction. *See Daimler*, 134 S. Ct. at 760-61 (rejecting "doing business" theory of general jurisdiction); *Tomazou*, 71 F. Supp. 3d at 15 (finding that sending representatives to D.C., employing lobbyist, and conducting banking transactions, among other contacts, did not confer general jurisdiction when organization was only "at home" in Northern Cyprus).[3]

**B.      Indiana also lacks specific jurisdiction over the SEC in this action.**

In a putative class action, "[s]pecific personal jurisdiction can arise only from the claims of the named plaintiffs, not those of absent class members." *Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866 (N.D. Ill. 2016); *see also Senne v. Kan. City Royals Baseball Corp*, 105 F. Supp. 3d 981, 1022 (N.D. Cal. 2015) (same).

A defendant is subject to specific jurisdiction only if: "(1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014). Moreover, to establish specific jurisdiction, a plaintiff must show that each claim in an action "*directly arise[s]* out of the specific contacts between the defendant and the forum state." *GCIU-*

---

[3] None of the SEC's member institutions are located in Indiana, either. Womack Decl. ¶ 4. Even if the SEC had member institutions in Indiana, jurisdiction over an association cannot be based on the presence of its member in a state. *Donatelli v. National Hockey League*, 893 F.2d 459, 461 (1st Cir. 1990).

*Employer Ret. Fund v. Goldfarb*, 565 F.3d 1018, 1024 (7th Cir. 2009) (emphasis in original). And jurisdiction "must rest on the *litigation-specific* conduct of the defendant in the proposed forum state." *Advanced Tactical Ordnance*, 751 F.3d at 801 (emphasis in original). "The relevant contacts are those that center on the relations among the defendant, the forum, and the litigation." *Id.* Moreover, the contacts must be ones that the *defendant* created with the forum. *Id.*; *see also Mobile Anesthesiologists Chicago v. Anesthesia Assoc. of Houston Metroplex*, 623 F. 3d 440, 444 (7th Cir. 2010) (specific jurisdiction exists when "the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities").

In addition, personal jurisdiction requires a defendant-by-defendant inquiry. The SEC can be subjected to jurisdiction in Indiana based only on its own actions. *Keeton v. Hustler Magazine, Inc*., 465 U.S. 770, 781 n.13 (1984) ("Each defendant's contacts with the forum State must be assessed individually."); *Rush v. Savchuk,* 444 U.S. 320, 332 (1980); *Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World*, 230 F.3d 934, 944 (7th Cir. 2000). The NCAA's activities are irrelevant.

Specific jurisdiction does not exist here with respect to any of the claims asserted by Plaintiff. The complaint wholly fails to allege any facts to support a basis for specific jurisdiction in Indiana—a failure that, in and of itself, is fatal. *See Mohammed,* 237 F. Supp. 3d at 733 (plaintiff must allege prima facie basis for jurisdiction or suffer dismissal). This omission is not surprising because the SEC has no contacts with Indiana related to this lawsuit. Womack Decl. ¶¶ 3-9. Richardson played football at the University of Florida, which is located in Florida, and now lives in Georgia. Compl. ¶¶ 9 & 78. The SEC is located in Alabama. *Id*. At the time that Richardson played football at the University of Florida, the NCAA was located in Kansas. *Id*. (The NCAA moved to Indianapolis in 2000. Womack Decl. ¶¶ 3-9.) Moreover, the University of

Florida has never played a football game in Indiana, and the SEC has never had any operations in Indiana. *Id*. The complaint has no factually specific allegations of any contacts that the SEC ever had with Indiana that related in any way to Richardson's participation in the University of Florida's football program. *Id*.

Personal jurisdiction must be present for each claim that a plaintiff asserts. *See In re Testosterone Replacement Therapy Prod. Liab. Litig.*, 164 F. Supp. 3d 1040, 1048-49 (N.D. Ill. 2016). Here, given the complete absence of any contacts of the SEC with Indiana, there is no factual basis for concluding that any of the claims asserted "*directly arise[s]* out of the specific contacts between the defendant and the forum state." *GCIU-Employer Ret. Fund*, 565 F.3d at 1024. Because the University of Florida never played a football game in Indiana while Richardson was a student-athlete, he could not have been injured there. Richardson also does not allege that he entered into a contract with the SEC in Indiana[4] or that the SEC engaged in fraudulent concealment, "'purposely directed at [Indiana].'" *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012) (quoting *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010)). Similarly, there is no factual relationship between Richardson's unjust enrichment claim and Indiana. Simply put, there is no basis for specific jurisdiction over the SEC in Indiana.

---

[4] Whether Richardson had a contractual relationship with the NCAA in Indiana has no bearing on his attempted assertion of personal jurisdiction over the SEC. *See RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1278 (7th Cir. 1997) (only dealings between parties in regard to the disputed contract are relevant to personal jurisdiction); *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 786 (7th Cir. 2003) (contacts of contractual assignor with Indiana did not confer jurisdiction over contractual assignee). In any event, the NCAA was located in Kansas when Richardson played college football, so it seems unlikely that he established a contractual relationship with the NCAA in Indiana.

### C. Plaintiff's claims should be dismissed for lack of personal jurisdiction without delay.

For the reasons explained above, the SEC should be dismissed from this action under Rule 12(b)(2), and that dismissal should not be delayed. Plaintiff has been aware of the personal jurisdiction issues for some time and has taken no actions to cure the deficiencies in its complaint. Shortly after this action was filed, counsel for the NCAA alerted Plaintiff's counsel that personal jurisdiction was lacking in many of the single-school, single-sport putative class actions. NCAA counsel then reiterated this at the hearing on November 30, 2016. [No. 8727, Dkt. #101; Tr. at 15:22 – 16:24.] Defendants also requested and this Court entered an order expressly preserving all personal jurisdiction defenses. [No. 8727, Dkt. #238.] Plaintiff took no actions to cure these deficiencies.

To be sure, the SEC recognizes that counsel for Plaintiff may file a new action against the SEC in a court with proper jurisdiction, and that the new action can then be transferred back to this Court for pretrial proceedings under 28 U.S.C. § 1407.[5] (In fact, the SEC understands that NCAA counsel suggested, well over a year ago, that plaintiffs' counsel address the personal jurisdiction deficiencies in this way.) Once pretrial proceedings in this action are concluded, however, it must be remanded to the jurisdiction in which it was filed for trial. *See* 28 U.S.C. § 1407 ("[e]ach action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred . . . "); *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998). The SEC is moving to dismiss for lack of personal jurisdiction to preserve its right to try the action in a court with proper jurisdiction.

---

[5] The SEC does not waive any arguments or defenses in the event that counsel for Plaintiff choses to proceed in this manner.

In addition, a determination of jurisdiction is important now because the choice-of-law rules of the transferor court that will govern in this Court are dependent on that determination. *In Re StarLink Corn Products Liability Litig.*, 211 F. Supp. 2d 1060, 1063 (N.D. Ill. 2002) (state law of transferor court applies); *In re Parmalat Securities Litig.*, 412 F. Supp. 2d 392, 399 & n.40 (S.D.N.Y. 2006) (same). As this Court has expressly recognized, choice-of-law issues directly impact the class certification issue that will be addressed first in the four sample cases. *See In re NCAA Student-Athlete Concussion Injury Litig.*, 314 F.R.D. 580, 595 (N.D. Ill. 2016) (noting that forum's choice of law rules govern, and that application of laws of multiple states weighs against class certification). Thus, it is important that the choice-of-law rules of a court of proper jurisdiction govern, not the choice-of-law rules of Indiana, where jurisdiction is improper.

## IV.      ARGUMENT – 12(b)(6)

It is axiomatic that, if a complaint's allegations make clear that the claims a plaintiff seeks to assert are time barred, the claims should be dismissed under Rule 12(b)(6). *Independent Trust v. Stewart Servs.*, 665 F.3d 930, 935-43 (7th Cir. 2012). Each of Plaintiff's claims here are time barred. Moreover, even if Plaintiff's claims were not barred by the statute of limitations, his broad, conclusory allegations of fraudulent concealment do not suffice under the pleading standard established by *Bell Atl. v. Twombly*, 550 U.S. 544 (2007), and Fed. R. Civ. P. 9(b). And Plaintiff's implied contract and unjust enrichment allegations are simply "a formulaic recitation of the elements of a cause of action" that are legally insufficient under *Twombly* and applicable state substantive law. *Twombly*, 550 U.S. at 555.

### A.      Plaintiff's claims are barred by the statutes of limitations.

"[W]hen a plaintiff's complaint . . . sets out all of the elements of an affirmative defense, dismissal under Rule 12(b)(6) is appropriate." *Independent Trust*, 665 F.3d at 935 (affirming Rule 12 dismissal of claims based on statute of limitations). Because the SEC seeks to dismiss

state law claims, this Court must "apply state law regarding the statute of limitations and 'any rules that are an integral part of the statute of limitations, such as tolling and equitable estoppel.'" *Id.* at 935 (citing *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010)). Thus, in determining whether Plaintiff's claims are barred by the statute of limitations, this Court must first determine which statutes of limitation govern the claims.

This action was transferred here on the NCAA's petition to the Judicial Panel on Multi-District Litigation from the Southern District of Indiana pursuant to 28 U.S.C. §1407, so if Plaintiff's claims survive the SEC's motion to dismiss for lack of personal jurisdiction, this Court must apply Indiana law in determining the applicable limitations periods. *In Re StarLink Corn*, 211 F. Supp. 2d at 1063 (state law of transferor court applies); *In re Parmalat Sec. Litig.*, 412 F. Supp. 2d at 399 & n. 40 (same); *Ogden Martin Sys. of Indianapolis v. Whiting*, 179 F.3d 523, 528 (7th Cir. 1999) (in diversity action, state limitations laws apply). Determining whether Plaintiff's claims are time-barred requires a multi-step legal analysis.

Plaintiff alleges that he played football at the University of Florida, located in Gainesville, Florida and that the SEC is located in Birmingham, Alabama. Compl. ¶¶ 10, 78. The complaint does not allege that the SEC has an Indiana agent for service of process,[6] and the docket shows that counsel for the SEC executed a waiver of service outside Indiana [Dkt. #6.]. Under Indiana law, when a cause of action arises outside Indiana against a nonresident defendant who does not have an Indiana agent for service of process, the action is time-barred if it would be "fully barred by the laws *both* of the place where the defendant resides *and* of the place where the cause of action arose." Ind. Code § 34-11-4-2 (emphasis added). The SEC resides in Birmingham, Compl. ¶ 10, and the complaint alleges that Plaintiff's cause of action arose in

---

[6] And the SEC does not have such an agent. Womack Decl. ¶ 5.

Florida, *id.* ¶ 78. Therefore, Plaintiff's claims against the SEC must be dismissed if they would be barred in both Florida and Alabama. 18 Ind. Law Encyc., Limitation of Actions § 7.

### 1.     Negligence

Florida does not have a "discovery rule" that tolls the limitations period for negligence claims until a plaintiff has discovered that he has a cause of action. *See Raie v. Cheminova*, 336 F.3d 1278, 1281-82 (11th Cir. 2003) (Florida applies discovery rule only to products liability claims); *Carter v. Lowe's Home Ctrs.*, 954 So. 2d 734, 735 (Fla. Ct. App. 2007) (discovery rule does not apply in negligence action) (both following *Davis v. Monahan*, 832 So. 2d 708 (Fla. 2002)). Alabama also does not follow a "discovery rule" in negligence actions. *Utilities Bd v. Shuler Bros.*, 138 So. 3d 287, 292-93 (Ala. 2013); *McWilliams v. Union Pacific Res.*, 569 So. 2d 702, 703 (Ala. 1990). Therefore, the statute in both states began to run when Plaintiff was allegedly injured while playing football at Florida from 1994 to 1996.[7] Accordingly, Plaintiff's negligence claim, on its face, is untimely under both the four-year negligence limitations period in Fla. Stat. § 95.11(3)(a) and the two year negligence limitations period in Ala. Code § 6-2-38(l).

In Florida, the limitations period may be tolled, however, if the complaint contains specific factual allegations of fraudulent concealment. *See Berisford v. Jack Eckerd*, 667 So. 2d 809, 811 (Fla. Dist. Ct. App.1995); *In re Engle Cases*, 2012 WL 12904243 (M.D. Fla. Nov. 26, 2012) (questioning whether fraudulent concealment is recognized in Florida but holding pleading

---

[7] In Florida, "[a] cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat. Ann. § 95.031. "The last element of a cause of action based on negligence is actual loss or damage." *Medical Data Sys. v. Coastal Ins. Group,* 139 So. 3d 394, 396 (Fla. Ct. App. 2014). In Alabama, a cause of action accrues "as soon as the [party in whose favor it arises] is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury." *Chandiwala v. Pate Constr.*, 889 So. 2d 540, 543 (Ala. 2004).

insufficient to invoke it in any event). The same is true in Alabama under Alabama Code § 6-2-3. *Waldrup v. Hartford Life Ins.*, 598 F. Supp. 2d 1219, 1227 (N.D. Ala. 2008). Under the laws of both states, however, the complaint in this action does not allege fraudulent concealment with sufficient factual detail to toll the statute of limitations.

"The Alabama Supreme Court has consistently held that a complaint is insufficient to invoke § 6-2-3 if it fails to allege any of the facts or circumstances by which the defendant concealed the cause of action or injury and fails to allege what prevented plaintiff from discovering facts surrounding the fraud." *Id.*; *see also Smith v. Nat'l Sec. Ins.*, 860 So. 2d 343, 347 (Ala. 2003) (deficient allegations prevented plaintiff from taking advantage of the tolling provision in § 6-2-3).

The complaint must allege the "time, place and the contents or substance of the false representations, the facts misrepresented, and an identification of what has been obtained" by the fraud. *Smith*, 860 So. 2d at 346 (quoting *Miller v. Mobile Cty. Bd. of Health*, 409 So. 2d 420, 422 (Ala. 1981)). Moreover, the complaint must allege the facts or circumstances by which [defendant] concealed the cause of action or injury [and] what prevented [plaintiff] from discovering the facts surrounding the injury." *Miller*, 409 So. 2d at 420.

If Florida recognizes tolling by fraudulent concealment at all, equally stringent standards apply. *See, e.g.*, *Engle Cases*, 2012 WL 12904243, *4 (extensively reviewing Florida case law and concluding that plaintiff must "identify an affirmative act by defendant to conceal the plaintiff's cause of action, after it had accrued"); *Raie*, 336 F.3d at 1282 n.1 ("defendants [must] engage in the willful concealment of the cause of action using fraudulent means to achieve the concealment"). Thus, in Florida, simply alleging a cause of action for fraud is insufficient; the plaintiff must allege that defendant engaged in "an affirmative act served to trick or hoodwink

15

the plaintiff such that he or she was falsely enticed into inaction after her cause of action accrued" and thereby attempted "to conceal the resulting claim that plaintiff might assert." *Engle Cases*, 2012 WL 12904243, *3 (citing *Burr v. Philip Morris*, 2012 WL 5290164, *4 & n.5 (M.D. Fla. Sept. 28, 2012)).

Under this precedent, the complaint here fails to plead fraudulent concealment sufficient to toll the limitations periods in either Florida or Alabama. The complaint contains only conclusory statements, and even equivocates about the knowledge of the SEC ("Defendants were willfully blind to and/or knowingly concealed . . . the risks of TBI . . ." Compl. ¶ 109). It does not allege any specific facts or events or identify any persons who allegedly had knowledge of potential risks to Plaintiff, or who engaged in any alleged concealment. Moreover, it does not allege that anyone with the SEC took any action designed to conceal that Plaintiff had a cause of action. Therefore, under black-letter principles of Florida and Alabama limitations law, Plaintiff's negligence claim must be dismissed.

### 2. Fraudulent Concealment Claim

For fraudulent concealment claims, Alabama's statute of limitations is two years, Ala. Code § 6-2-38(l), and Florida's statute of limitations is four years, Fla. Stat. § 95.11(3)(j), subject to a repose period of twelve years, Fla. Stat. § 95.031(2)(a). The Alabama statute is subject to tolling only if a plaintiff's complaint includes specific allegations of fraudulent concealment, under the same precedent analyzed above with respect to negligence claims, *Waldrup*, 598 F. Supp. 2d at 1227, so Plaintiff's fraudulent concealment claim is barred by Ala. Code § 6-2-38(l). Florida courts sometimes apply a discovery rule in fraud cases, *see Brugiere v. Credit Commerciale France*, 679 So. 2d 875 (Fla. 1st Dist. Ct. App. 1996), but because Plaintiff acknowledges that he last played football in 1996 and alleges no affirmative acts by the SEC

within the repose period of twelve years, his fraudulent concealment claim is barred in Florida by § 95.031(2)(a). *See Hess v. Philip Morris*, 175 So. 3d 687, 696 (Fla. 2015).[8]

### 3. Implied Contract and Unjust Enrichment Claims

In Alabama, actions based on implied contracts are subject to a six-year limitations period, Ala. Code § 6-2-34(9), *see Utilities Board*, 138 So. 3d at 294, and unjust enrichment claims are subject to either a two- or six-year period, depending on whether the claim is more tort-like or arises from a "technically invalid contract." *Auburn Univ. v. IBM*, 716 F. Supp. 2d 1114, 1118 (M.D. Ala. 2010). Alabama breach of contract claims accrue on the date the contract is breached, not when the plaintiff (later) incurs damage as a result of the breach. *Ishler v. CIR*, 442 F. Supp. 2d 1189, 1217 (N.D. Ala. 2006) (citing *AC v. Baker*, 622 So. 2d 331, 333 (Ala. 1993)). There is no tolling or discovery rule for breach of contract claims in Alabama. *McCollough Enter. v. Marvin Windows & Doors*, 2010 WL 5014670, *4 (S.D. Ala. 2010). And any unjust enrichment claim would have accrued and the limitations period would have begun to run no later than the date that the SEC allegedly "receive[d] significant revenues from the collegiate football played by [Plaintiff]." Compl. ¶ 142; *Auburn Univ.*, 716 F. Supp. 2d at 1118-19.

In Florida, breach of contract claims founded on a written instrument are subject to a five-year limitations period, Fla. Stat. § 95.11 (2)(b), and other contract and unjust enrichment claims are subject to a four-year limitations period. *Id.* § 95.11(3)(k). Absent fraudulent concealment, neither implied contract nor unjust enrichment claims are subject to tolling in Florida. *Beck v. Lazard Freres & Co.*, 175 F.3d 913, 914 (11th Cir. 1999) (no tolling for claims

---

[8] Technically, the Indiana borrowing statute does not "borrow" the Florida repose period, only the Florida limitations period. Because the complaint alleges that Plaintiff was injured in Florida, however, the Florida repose period governs for purposes of Rule 12(b)(6). *Klein v. DuPuy*, 506 F.3d 553, 555 (7th Cir. 2007).

based on contractual obligations); *Davis*, 832 So. 2d at 710 (no tolling of unjust enrichment claim that senile plaintiff did not discover within limitations period). Any unjust enrichment claim accrues upon retention of improper benefits. *Merle Wood & Assoc. v. Trinity Yachts*, 857 F. Supp. 2d 1294, 1309-10 (S.D. Fla. 2012). And any breach of implied contract claim accrues upon breach by a defendant, "not when later events create the bulk of a plaintiff's damages." *Medical Jet v. Signature Flight Support*, 941 So. 2d 576, 579 (Fla. 4th Dist. Ct. App. 2006); *see also Bedtow Group II v. Ungerleider*, 684 Fed. App'x. 839, 842 (11th Cir. 2017). As a result, the limitations period on any contract or unjust enrichment claims by Plaintiff began to run in Florida no later than 1996, when he alleges he stopped playing football at the University of Florida.

Under the limitations laws of both Alabama and Florida, all of Plaintiff's implied contract and unjust enrichment claims accrued in or prior to 1996, are time barred under any potentially applicable statute of limitations, and should be dismissed.

### B.     Plaintiff's fraudulent concealment claims also fail under Rule 9(b).

Plaintiff's claims for fraudulent concealment[9] should be dismissed for a separate and independent reason. The complaint falls short under Rule 9(b). Instead of the detailed factual

---

[9] "Rule 9(b) applies to averments of fraud, not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." *Borsellino v. Goldman Sachs,* 477 F.3d 502, 507 (7th Cir. 2007). Plaintiff has included in his negligence action two "sub-claims": a claim that Defendants failed to institute guidelines to prevent, monitor and treat head injuries from college football play, *see, e.g.*, Compl. ¶ 94, and a claim that Defendants breached their duties to Plaintiff by "fraudulently concealing and/or failing to disclose" information concerning the risks and dangers of head trauma, *id.* ¶ 95. Despite Plaintiff's use of "and/or" in these allegations, however, it is clear from the rest of Plaintiff's complaint that he is contending that Defendants' failure to disclose was intentional, not negligent. *See, e.g., id.* ¶¶ 2, 5, 7, 59. Thus, Rule 9(b) applies not only to Plaintiff's entire Second Cause of Action (for "Fraudulent Concealment"), but also to any averments included in Plaintiff's Negligence Cause of Action that allege a breach of the duty to disclose. *See Imagenetix v. Walgreen*, 2012 WL 1231067, *5 (N.D. Ill. Apr. 12, 2012) (dismissing unjust enrichment claim that incorporated fraud allegations as deficient under

pleading required by Rule 9(b), it simply (i) recites a number of medico-scientific studies concerning the risks and effects of head impacts (Compl. ¶¶ 45-59); (ii) declares that Defendants and the University of Florida knew of these studies and risks (*id.* ¶ 60); and (iii) repeatedly avers, without any corroborating facts, that Defendants intentionally concealed these risks (*id.* ¶¶ 5, 97, 110) and "kept their players and the public in the dark" (*id.* ¶ 2).

Rule 9(b) demands much more than this. *See Vicom v. Harbridge Merchant Servs.*, 20 F.3d 771, 777 (7th Cir. 1994); *Sears v. Likens,* 912 F.2d 889, 893 (7th Cir. 1990); *Wigod v. Wells Fargo Bank*, 673 F.3d 547, 571 (7th Cir. 2012) (applying Rule 9(b) to fraudulent concealment claims). As the Seventh Circuit explained in *DiLeo v. Ernst & Young,* 901 F.2d 624, 627 (7th Cir. 1990), the Rule "requires the plaintiff to state with particularity any circumstances constituting fraud, [meaning] . . . the who, what when, where and how[.]" And these details must be alleged with respect to *each* defendant, not collectively against all, so as to "inform each defendant of the nature of his alleged participation in the fraud." *Vicom*, 20 F.3d at 778.

Like the complaints in the cases cited above, Plaintiff's complaint is fatally unspecific. Plaintiff has not identified a single SEC agent, representative or employee who participated in the decades-long concealment that he alleges. He has not made any effort to distinguish the alleged misconduct of the NCAA or the SEC; instead, like the plaintiff in *Sears,* he consistently "lumps [them] together" when alleging fraud. *Sears*, 912 F.2d at 893. And he has not provided any details whatsoever about the manner in which the fraud was accomplished, for example, "details about meetings or communications during which information that plaintiff says should have been provided was omitted." *See In re Testosterone Replacement Therapy Products Liab. Litig.,* 159 F. Supp. 3d 898, 921 (N.D. Ill. 2016) (dismissing fraudulent concealment claim for a

Rule 9(b) and noting that, "[w]ith fraud as the underlying theory to the unjust enrichment claim, it must fail along with the claim of fraud.")

violation of Rule 9(b)). Thus, even if all of Plaintiff's claims were not time-barred, the failure of the complaint even to attempt to meet the standards of Rule 9(b) would compel dismissal of Plaintiff's fraudulent concealment claims.

### C. Plaintiff fails to state a claim for breach of an implied contract.

If the SEC's personal jurisdiction motion is denied, Indiana choice-of-law principles will also determine which state's law will apply to Plaintiff's implied contract claims. *In re StarLink*, 211 F. Supp. 2d at 1063; *Digitech Computer v. Trans-Care*, 583 F. Supp. 2d 984, 991 (S.D. Ind. 2008). Indiana choice of law rules for implied contract claims require application of the law of the state with the "most significant contacts." *Travelers Ins. v. Rogers*, 579 N.E.2d 1328, 1330-31 (Ind. Ct. App. 1991). The complaint alleges that the Plaintiff played football at the University of Florida and that the SEC is located in Alabama. Based upon these allegations, either Florida or Alabama law governs Plaintiff's implied contract claim against the SEC.

In support of his cause of action against the SEC for breach of an implied contract, Plaintiff alleges he agreed to "be bound by NCAA and SEC rules and regulations in exchange for their participation in NCAA and SEC controlled athletic programs[.]" Compl. ¶ 129. "As a condition of the [alleged] implied contract," Plaintiff continues, "the SEC agreed to implement the promises set forth in [the NCAA's] Constitution and Bylaws[.]" *Id.* Plaintiff contends that he "indicated [his] acceptance of the contract, and further, fully performed under the contract, by participating in the University of Florida football program." *Id.* at ¶ 130. These allegations, as a matter of law, fail to state a claim for formation of an implied contract under either Florida or Alabama law.

Both Florida and Alabama require the same elements for formation of an implied contract as an express one: offer, acceptance and consideration. *Steiger v. Huntsville City Bd. of Educ.,* 653 So. 2d 975, 978 (Ala. 1995); *Merle Wood*, 857 F. Supp. 2d at 1304. A contract implied in

fact requires the same elements as an express contract, and differs only in "the method of expressing mutual assent." *Welborn v. Snider*, 431 So. 2d 1198, 1200 (Ala. 1983); *see also Commerce P'ship v. Equity Contracting*, 695 So. 2d 383, 385 (Fla. 4th Dist. Ct. App. 1997) (expressing same rule in different words). Thus, a plaintiff must allege facts that make clear the parties' "mutual intent to contract," including "all the elements of an express contract." *Broyles v. Brown Eng'g*, 151 So. 2d 767, 770 (Ala. 1963); *see also Merle Wood*, 857 F. Supp. 2d at 1305 (noting that under Florida law a plaintiff asserting an implied contract claim has an even greater burden than plaintiff alleging express contract claim). The existence of such a contract depends on the "assent of the parties." *Policastro v. Myers*, 420 So. 2d 324, 326 (Fla. 4th Dist. Ct. App. 1982); *Steiger*, 653 So. 2d at 978.

Here, Plaintiff has failed to allege what is perhaps the most fundamental element needed to show a mutual intent to contract—that he had some contact or communication with the SEC. *See Bush v. Goldman Sachs*, 544 So. 2d 873, 874-75 (Ala. 1989) (rejecting plaintiff's claim that he had an implied contract with the City of Mobile because "[plaintiff] admits that he had no contact with the City."); *Commerce P'ship*, 695 So. 2d at 385 (subcontractor had no implied contract with owner). Plaintiff also fails to allege any action that the SEC took, or communication he had with the SEC, to express or imply mutual assent to enter into a contractual relationship. He does not allege when the implied-in-fact contract was supposedly formed, include specifics as to its purported terms, or provide any factual allegations in support.

Plaintiff's conclusory assertion that the rules and regulations of the NCAA and SEC somehow created a contractual relationship is insufficient to allege the existence of an implied-in-fact contract under either Alabama or Florida law. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). As the Seventh Circuit has explained, "the fact that the allegations undergirding a plaintiff's claim could be true is no longer [after *Twombly*] enough to save it." *Atkins v. City of Chicago*, 631 F.3d 823, 831 (7th Cir. 2011). "[T]he complaint taken as a whole must establish a nonnegligible probability that the claim is valid[.]" *Id*. at 832.

Following these pleading rules, the Ninth Circuit rejected a claim similar to the one that Plaintiff attempts to assert here, holding that the Constitution, Bylaws and Articles of the Pac-10 (now Pac-12) Conference were "vague, hortatory pronouncements . . . [that] are not sufficient to support the players' claims that the Pac-10 intended to assume a direct contractual obligation to every football player on a Pac-10 team." *Hairston v. Pacific 10 Conf.*, 101 F.3d 1315, 1320 (9th Cir. 1996). Courts have also routinely rejected conclusory allegations of implied contract in cases where (unlike here) the plaintiff had a direct relationship with the defendant. *See Bissessur v. Ind. Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009) (student alleged no facts supporting his conclusory statement that he had entered into a contractual relationship with the University of Indiana based on its student handbook); *Steiger*, 653 So. 2d at 977 (holding that adoption of safety policy by a school board did not create contract rights). Thus, Plaintiff's implied contract claim should be dismissed.

### D. Plaintiff fails to state a claim for unjust enrichment.

Plaintiff's cause of action for unjust enrichment would also be governed by either Florida or Alabama law, under Indiana choice-of-law principles, based on the allegations in the complaint. *See Micro Data Base Sys. v. Dharma Sys.*, 148 F.3d 649, 653 (7th Cir. 1998) (holding that Indiana choice-of-law rules for contracts apply to unjust enrichment claims) (citing Restatement (2d) Conflicts of Laws § 221). As with the implied contract claim, the allegations of the complaint fail to state a claim for unjust enrichment under either Florida or Alabama law.

22

The complaint asserts that "Defendants receive significant revenue from the collegiate football played by student-athletes." Compl. ¶ 141. Plaintiff goes on to contend that "under principles of equity and good conscience, Defendants should not be permitted to retain [these] profits at the expense of Plaintiff[.]" *Id.* ¶ 144. Instead, Plaintiff suggests, because of their alleged misconduct, Defendants should be required to pay for the medical expenses of Plaintiff and other members of the Class. *Id.* Conspicuously, however, Plaintiff fails to allege the key element required to state a claim for unjust enrichment, which is that his alleged head injury conferred any benefit on the SEC (or on any other defendant).

Bodily injury claimants, like the Plaintiff, do not have claims for unjust enrichment. Unjust enrichment contemplates an entirely different kind of claim and recovery. As Florida courts have recognized, unjust enrichment permits a plaintiff to recover a gain or benefit that the defendant should not properly retain. *See, e.g.*, *Commerce P'ship*, 695 So. 2d at 386; *Am. Safety Ins. Serv. v. Griggs*, 959 So. 2d 322, 331 (Fla. 5th Dist. Ct. App. 2007). Alabama courts similarly hold that an unjust enrichment claim arises when a defendant "holds money, which in equity and good conscience, belongs to plaintiff or holds money which was improperly paid to defendant because of mistake or fraud." *Avis v. Heilman*, 876 So. 2d 1111, 1123 (Ala. 2003) (*quoting Hancock-Hazlett Gen. Const. v. Trane*, 499 So. 2d 1385, 1387 (Ala. 1986)). This measure of recovery has no relationship to—and cannot be measured by—the damage that a plaintiff claims to have suffered as a result of alleged head injuries. *Id.*; *see also Merl Wood*, 857 F. Supp. 2d at 1306; *Swafford v. Schweitzer*, 906 So. 2d 1194, 1195 (Fla. 4th Dist. Ct. App. 2005) (both requiring that plaintiff confer a benefit on defendant to state a claim for unjust enrichment).[10]

---

[10] The Seventh Circuit, applying Indiana law, is in accord. *See Creative Demos v. Wal-Mart*, 142 F.3d 367, 372 (7th Cir. 1998). As Professor Dobbs explains in his authoritative treatise, "the damages remedy and the restitution remedies are always conceptually distinct." 1 Dan B. Dobbs,

Here, Plaintiff does not and cannot contend that his alleged head injuries benefitted the SEC or any other Defendant. In fact, he expressly acknowledges that any benefit received by the SEC arises not from an alleged head injury, but from merchandising, broadcasting and ticket revenue. Compl. ¶ 142.[11] Moreover, Plaintiff does not allege that *he* paid this revenue to the Defendants, much less that he paid the revenue while laboring under a mistake of fact or in a misunderstanding of any legal right or duty. Thus, under the uniform case precedent cited above, Plaintiff has no claim for unjust enrichment.

## V.     CONCLUSION

For the reasons set forth above, the SEC should be dismissed from this action for lack of personal jurisdiction. Alternatively, all claims asserted by Plaintiff against the SEC should be dismissed, with prejudice.

---

*Law of Remedies: Damages–Equity–Restitution* § 4.2(3), 581 (2d ed. 1993). "To measure damages, the courts look at the plaintiff's loss or injury; to measure restitution, the courts look at the defendant's gain or benefit." *Id.*

[11] In any event, federal courts have uniformly rejected claims that student-athletes have a right to share in merchandising, broadcasting and ticket revenue. *See O'Bannon v. NCAA*, 802 F.3d 1049, 1054 (9th Cir. 2015) (rejecting antitrust claim based on use of student-athlete names, images and likenesses); *Marshall v. ESPN*, 111 F. Supp. 3d 815, 837 (M.D. Tenn. 2015) *aff'd*, 668 Fed. App'x. 155 (6th Cir. 2016) (rejecting various claims based on appearance of student-athletes in broadcasts and games, including unjust enrichment claim by former player); *see also Board of Regents v. NCAA*, 468 U.S. 85 (1984); *Agnew v. NCAA*, 683 F.3d 328 (7th Cir. 2012); *Berger v. NCAA*, 643 F.3d 285 (7th Cir. 2016); *McCormack v. NCAA*, 845 F.2d 1338 (5th Cir. 1988) (all holding that NCAA rules can validly prohibit payment to student-athletes).

Dated: December 14, 2017    Respectfully submitted,

             /s/ *Robert W. Fuller*         
             Robert W. Fuller, One of the Attorneys for
             Defendant Southeastern Conference

Robert W. Fuller (N.C. Bar No. 10887)
 rfuller@robinsonbradshaw.com
Stephen M. Cox (N.C. Bar No. 23057)
 scox@robinsonbradshaw.com
Pearlynn G. Houck (N.C. Bar No. 36364)
 phouck@robinsonbradshaw.com
Richard C. Worf (N.C. Bar No. 37143)
 rworf@robinsonbradshaw.com
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000

## CERTIFICATE OF SERVICE

I, Robert W. Fuller, certify that on December 14, 2017, a true and correct copy of the foregoing document was filed through the CM/ECF system, which caused notice to be sent to all counsel of record.

/s/ *Robert W. Fuller*
Robert W. Fuller, One of the Attorneys for
Defendant Southeastern Conference

Robert W. Fuller (N.C. Bar No. 10887)
 rfuller@robinsonbradshaw.com
ROBINSON, BRADSHAW & HINSON, P.A.
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
Facsimile: (704) 378-4000