**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: NATIONAL COLLEGIATE ATHLETIC ASSOCIATION STUDENT-ATHLETE CONCUSSION INJURY LITIGATION-SINGLE SPORT/SINGLE SCHOOL (FOOTBALL) | ) ) ) ) ) | **MDL No. 2492** |
| | ) | **Master Docket No. 1:16-cv-08727** |
| JAMIE RICHARDSON, individually and on behalf of all others similarly situated, | ) ) ) | **This Document Relates To:** **Case No. 1:16-cv-09980** |
| Plaintiff, | ) | |
| v. | ) | **Judge John Z. Lee** |
| | ) | |
| SOUTHEASTERN CONFERENCE and NATIONAL COLLEGIATE ATHLETIC ASSOCIATION, | ) ) ) | **Magistrate Judge M. David Weisman** |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE NCAA'S MOTION TO**
**DISMISS COUNTS II, III, IV, V AND VI OF PLAINTIFF'S COMPLAINT**

Date:  December 14, 2017

Mark S. Mester
   mark.mester@lw.com
Kathleen P. Lally
   kathleen.lally@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION AND FACTUAL BACKGROUND ......................................................1

II.    ARGUMENT ............................................................................................................2

    A.    Choice Of Law ................................................................................................2

        1.    A Choice Of Law Analysis Is Necessary, Because There Is A Conflict Between The Applicable Substantive Laws Of Indiana And Florida ................................................................................................3

        2.    Applicable Law For Plaintiff's Fraudulent Concealment Claim ................4

        3.    Applicable Law For Plaintiff's Contract And Unjust Enrichment Claims ................................................................................................5

    B.    Legal Standard ................................................................................................7

    C.    Plaintiff's Fraudulent Concealment Claim Should Be Dismissed ..........................8

        1.    Plaintiff Fails To Plead His Fraudulent Concealment Claim With Sufficient Particularity ................................................................................8

        2.    The Statute Of Repose Also Bars Plaintiff's Fraudulent Concealment Claim ................................................................................10

    D.    Plaintiff's Express Contract Claim Should Also Be Dismissed ..........................10

    E.    Plaintiff's Implied Contract Claim Should Also Be Dismissed ..........................12

    F.    Plaintiff's Third-Party Beneficiary Claim Should Also Be Dismissed ................12

    G.    Plaintiff's Unjust Enrichment Claim Should Also Be Dismissed ........................14

III.    CONCLUSION ....................................................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

Am. Emp'rs Ins. Co. v. Coachmen Indus., Inc.,
  838 N.E.2d 1172 (Ind. Ct. App. 2005) ...................................................................... 6

Aprigliano v. Am. Honda Motor Co., Inc.,
  979 F. Supp. 2d 1331 (S.D. Fla. 2013) ...................................................................... 9

Aronson v. Celebrity Cruises, Inc.,
  30 F. Supp. 3d 1379 (S.D. Fla. 2014) ...................................................................... 14

Ash v. Royal Caribbean Cruises Ltd.,
  2014 WL 6682514 (S.D. Fla. 2014) ...................................................................... 13

Bell Atl. Corp. v. Twombly,
  550 U.S. 544 (2007) ...................................................................... 6, 7, 8

Bissessur v. Inc. Univ. Bd. of Trs.,
  581 F.3d 599 (7th Cir. 2009) ...................................................................... 11

Brown v. Ind. Nat'l Bank,
  476 N.E.2d 888 (Ind. Ct. App. 1985) ...................................................................... 3

C.I. Spataro Napoli, S.A. v. Fashion Concepts, Inc.,,
  2012 WL 12862817 (S.D. Fla. 2012) ...................................................................... 11

Cain v. Griffin,
  849 N.E.2d 507 (Ind. 2006) ...................................................................... 4

Camasta v. Jos. A. Bank Clothiers, Inc.,
  761 F.3d 732 (7th Cir. 2014) ...................................................................... 7

Castelli v. Steele,
  700 F. Supp. 449 (S.D. Ind. 1988) ...................................................................... 5

Diesel Serv. Co. v. AMBAC Int'l Corp.,
  961 F.2d 635 (7th Cir. 1992), overruled on other grounds by
  Generac Corp. v. Caterpillar Inc., 172 F.3d 971 (7th Cir. 1999) ...................................................................... 7

Doe v. Vill. of Arlington Heights,
  782 F.3d 911 (7th Cir. 2015) ...................................................................... 8

Eby v. York-Div., Borg-Warner,
  455 N.E.2d 623 (Ind. Ct. App. 1983) ...................................................................... 4, 7

**Page(s)**

F. McConnell & Sons, Inc. v. Target Data Sys., Inc.,
    84 F. Supp. 2d 961 (N.D. Ind. 1999) ................................................................. 4

Friedman v. N.Y. Life Ins. Co.,
    985 So.2d 56 (Fla. Dist. Ct. App. 2008) ............................................................. 10

Gill v. Evansville Sheet Metal Works, Inc.,
    970 N.E.2d 633 (Ind. 2012) ................................................................................. 3

Gonzalez v. ADT LLC,
    161 F. Supp. 3d 648 (N.D. Ind. 2016) ................................................................ 3

Greenberg v. Miami Children's Hosp. Research Inst., Inc.,
    264 F. Supp. 2d 1064 (S.D. Fla. 2003) ............................................................... 9

Hairston v. Pacific 10 Conference,
    101 F.3d 1315 (9th Cir. 1996) ............................................................................ 14

Hartford Acc. & Indem. Co. v. Dana Corp.,
    690 N.E.2d 285 (Ind. Ct. App. 1997) ........................................................... 3, 5, 7

Hess v. Philip Morris USA, Inc.,
    175 So. 3d 687 (Fla. 2015) ........................................................................ 3, 8, 10

Heuer v. Nissan N. Am., Inc.,
    2017 WL 3475063 (S.D. Fla. 2017) .................................................................... 10

In re Jewell,
    554 B.R. 169 (Bankr. N.D. Ind. 2016) ............................................................... 2

In re National Collegiate Athletic Association Student-Athlete Concussion Injury Litig.,
    314 F.R.D. 580 (N.D. Ill. 2016) ......................................................................... 5

In re Sulfuric Acid Antitrust Litig.,
    743 F. Supp. 2d 827 (N.D. Ill. 2010) .............................................................. 2, 3

In re Testosterone Replacement Therapy Prods. Liab. Litig.,
    159 F. Supp. 3d 898 (N.D. Ill. 2016) ................................................................. 7

Interleda Co. v. Zhongshan Broad-Ocean, Motor Co.,
    2015 WL 1310724 (N.D. Ind. 2015) ............................................................... 6, 7

JMR Sales, Inc. v. MMC Elecs. Am., Inc.,
    2002 WL 31269612 (N.D. Ill. 2002) .................................................................. 9

Johnson v. Catamaran Health Solutions, LLC,
    687 F. App'x 825 (11th Cir. 2017) ........................................................... 4, 14, 15

iii

**Page(s)**

Jovine v. Abbott Labs, Inc.,
  795 F. Supp. 2d 1331 (S.D. Fla. 2011) ................................................................. 4, 10, 11, 13

Klein v. Depuy, Inc.,
  476 F. Supp. 2d 1007 (N.D. Ind. 2007) ...................................................................... 3

Kosten v. Kosten,
  2016 WL 7231608 (N.D. Ill. 2016) ............................................................................ 2

Kunkler v. Fort Lauderdale Hous. Auth.,
  764 F. Supp. 171 (S.D. Fla. 1991) ............................................................................ 12

Lawrence Wholesale LLC v. Nicholson,
  2015 WL 1038001 (S.D. Ind. 2015) .......................................................................... 5

Monahan v. WHM, LLC,
  2010 WL 11504336 (S.D. Fla. 2010) ......................................................................... 12

Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Standard Fusee Corp.,
  940 N.E.2d 810 (Ind. 2010) ....................................................................................... 6

Norris v. Myers Spring Co. Inc.,
  2017 WL 4684611 (N.D. Ind. 2017) .......................................................................... 5

Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,
  631 F.3d 436 (7th Cir. 2011) ..................................................................................... 9

Publications Int'l Ltd. v. Mindtree Ltd.,
  2014 WL 3687316 (N.D. Ill. 2014) ............................................................................ 9

Rebman v. Follett Higher Educ. Grp., Inc,
  248 F.R.D. 624 (M.D. Fla. 2008) ............................................................................. 13, 14

Reed v. Reid,
  980 N.E.2d 277 (Ind. 2012) ....................................................................................... 4

Remy, Inc. v. Tecnomatic S.P.A.,
  2014 WL 2882855 (S.D. Ind. 2014) ........................................................................... 11

Sears v. Likens,
  912 F.2d 889 (7th Cir. 1990) ..................................................................................... 9

Shaffer v. Bank of New York Mellon,
  2017 WL 3065222 (M.D. Fla. 2017) ......................................................................... 4, 12

Steadfast Ins. Co. v. Corporate Protection Sec. Grp., Inc.,
  554 F. Supp. 2d 1335 (S.D. Fla. 2008) ...................................................................... 4

**Page(s)**

Thomas v. UBS AG,
   706 F.3d 846 (7th Cir. 2013) ............................................................................ 11

Tucker v. Tom Raper, Inc.,
   81 N.E.3d 1088 (Ind. Ct. App. 2017) .............................................................. 11

Wakley v. Sustainable Local Foods LLC,
   2017 WL 1880814 (S.D. Ind. 2017) ............................................................ 4, 11

Washington Frontier League Baseball, LLC v. Zimmerman,
   2015 WL 7300555 (S.D. Ind. 2015) ................................................................ 14

**STATUTES**

28 U.S.C. § 1407 .................................................................................................... 2

Fla. Stat. Ann. § 95.031 ................................................................................... 3, 10

In support of its motion to dismiss Counts II, III, IV, V and VI of the Complaint of Plaintiff Jamie Richardson ("Plaintiff"), the National Collegiate Athletic Association ("NCAA") submits the following memorandum of law:

## I. INTRODUCTION AND FACTUAL BACKGROUND

The Complaint filed by Plaintiff asserts claims against the NCAA for fraudulent concealment, breach of express contract, breach of implied contract and unjust enrichment. See Compl. (Dkt. #1) ¶¶ 107-33, 141-45.[1] The Complaint also includes a third-party beneficiary claim. See id. ¶¶ 134-40. In support of these claims, Plaintiff alleges that he suffered "repetitive concussions and sub-concussive hits in practices and games," while playing football at the University of Florida from 1994 to 1996, and further alleges he currently suffers from "severe daily headaches, memory loss, dizziness, and other debilitating issues." See id. ¶¶ 78, 81, 84.

Plaintiff does not plausibly allege, however, fraudulent concealment, breach of contract or unjust enrichment. See disc. infra at 8-15. For the fraudulent concealment claim, Plaintiff alleges that the NCAA failed to disclose the risks of traumatic brain injury from playing football, which the NCAA -- but not Plaintiff -- supposedly learned about through published literature. See Compl. ¶¶ 108-10. Plaintiff, however, does not identify a single interaction he had with the NCAA, nor does he identify any individual at the NCAA who purportedly concealed information from him. See id. at passim.

Plaintiff likewise fails to allege the existence of an express or implied contract. See disc. infra at 10-12. Plaintiff summarily asserts he entered into a contract with the NCAA. See Compl. ¶ 118, 129. The sole basis for this claim, however, is the fact that Plaintiff was allegedly required by the University of Florida to sign a form indicating that he had read various NCAA governance documents (e.g., the NCAA's Constitution) and would abide by the NCAA's bylaws. See id. But Plaintiff does not allege any facts suggesting that the parties actually intended to

---

[1] Unless stated otherwise, all emphasis is supplied, and all internal citations and quotations are omitted from all quoted material herein.

enter into a contract or that the NCAA's governing documents were somehow intended to supply the terms of that contract.  See id. at passim.

In his third-party beneficiary claim, Plaintiff alleges he was supposedly the intended beneficiary of a contract between the NCAA and University of Florida.  See Compl. ¶¶ 134-40. Plaintiff, however, alleges no facts suggesting an agreement existed, let alone that one existed expressly for Plaintiff's benefit.  See id.  Moreover, Plaintiff does not attach any agreement to his Complaint for any of the contract counts, nor do any such contracts actually exist.[2]

Finally, for the unjust enrichment claim, Plaintiff alleges that the NCAA was unjustly enriched through the receipt of contractual revenues.  See Compl. ¶¶ 141-45.  Since those revenues, however, were not from Plaintiff but rather from broadcasting, merchandising agreements and ticket sales, they cannot form the basis of an unjust enrichment claim under governing law.  See id. ¶ 142; disc infra at 14-15.

## II.      ARGUMENT

Counts II, III, IV, V and VI of Plaintiff's Complaint fail to state a claim upon which relief can be granted, because Plaintiff fails to plausibly plead the elements of each claim under governing law.  See disc. infra at 8-15.  Accordingly, the Court should dismiss each count with prejudice.  See id.

### A.      Choice Of Law

A threshold issue is, of course, choice of law.  See generally In re Sulfuric Acid, 743 F. Supp. 2d 827, 852-53 (N.D. Ill. 2010).  When a case where jurisdiction is based on diversity of citizenship is transferred pursuant to the multidistrict litigation statute (i.e., 28 U.S.C. § 1407), the transferee court should apply the state law that the transferor court would have applied,

---

[2] As various courts have noted, "[w]hen a claim is based upon a writing, such as a contract, promissory note or guaranty, it is customary to attach a copy of the document to the plaintiff's complaint."  See, e.g., In re Jewell, 554 B.R. 169, 170-71 (Bankr. N.D. Ind. 2016).  Plaintiff, of course, deviates from this custom, suggesting no contract actually exists.  See, e.g., Kosten v. Kosten, 2016 WL 7231608, *2 (N.D. Ill. 2016) (dismissing contract claim and noting that "[p]laintiffs would be well advised to attach the relevant contract(s) to their amended complaint if and when they file one").

according to the choice of law rules of the forum state of the transferor court. Id. at 852. In this case, Plaintiff alleges jurisdiction is based on diversity of citizenship. See Compl. ¶ 12. Thus, the Court should apply to Plaintiff's individual claims the choice of law rules that a district court in Indiana would apply, because the Judicial Panel on Multidistrict Litigation transferred this case from that court. See CTO-8 (Dkt. #38), In re NCAA, No. 1:16-cv-08727 (N.D. Ill.).

1. **A Choice Of Law Analysis Is Necessary, Because There Is A Conflict Between The Applicable Substantive Laws Of Indiana And Florida**

Under Indiana law, a choice of law analysis is necessary only if a conflict exists between the relevant laws of the different states involved in the transaction at issue. See Hartford v. Dana, 690 N.E.2d 285, 291 (Ind. Ct. App. 1997). In this case, those states are ostensibly Indiana and Florida. As set forth herein, however, the substantive laws of Indiana and Florida are in fact in conflict. See disc. infra at 3-4.

First, it is not clear whether Indiana even recognizes fraudulent concealment as an independent cause of action. See, e.g., Gonzalez v. ADT, 161 F. Supp. 3d 648, 655 (N.D. Ind. 2016) ("[F]raudulent concealment does not create its own cause of action."). Where Indiana courts have permitted a plaintiff to assert such a claim, however, the elements were noticeably different from those of a fraudulent concealment claim under Florida law. Compare Brown v. Ind. Nat'l Bank, 476 N.E.2d 888, 891 (Ind. Ct. App. 1985), with Hess v. Philip Morris, 175 So. 3d 687, 691 (Fla. 2015). Equally significant for present purposes, however, fraud claims under Florida law (but not Indiana law) are subject to a strict twelve-year statute of repose. See Fla. Stat. Ann. § 95.031(2); Hess, 175 So.3d at 696.[3]

Second, to state an express or implied contract claim under Indiana law, a plaintiff must allege "the existence of a contract, the defendant's breach thereof, and damages." See Wakley v.

---

[3] Unlike a statute of limitations, which is a "procedural bar to a remedy," a statute of repose "mark[s] the outer boundaries of substantive legal rights." Gill v. Evansville Sheet Metal, 970 N.E.2d 633, 637 n.4 (Ind. 2012). Accordingly, courts consider statutes of repose in evaluating whether the laws of two states are in conflict. See, e.g., Klein v. Depuy, 476 F. Supp. 2d 1007, 1011 (N.D. Ind. 2007) (finding conflict "between North Carolina's six-year statute of repose and Indiana's ten-year statute of repose").

Sustainable Local Foods, 2017 WL 1880814, *3 (S.D. Ind. 2017); F. McConnell & Sons v. Target Data Sys., 84 F. Supp. 2d 961, 975 (N.D. Ind. 1999). By contrast, under Florida law, a plaintiff must allege "(1) a valid contract; (2) a material breach; and (3) damages" to state an express or implied contract claim. See Jovine v. Abbott, 795 F. Supp. 2d 1331, 1341 (S.D. Fla. 2011); Shaffer v. BONY, 2017 WL 3065222, *3 (M.D. Fla. 2017). In Florida (but not Indiana), a complaint must allege facts bearing on offer and acceptance in order to satisfy the first element. See Jovine, 795 F. Supp. 2d at 1341.

Third, for third-party beneficiary claims, Indiana law requires that the intent to benefit a third party "affirmatively appear from the language of the instrument." Cain v. Griffin, 849 N.E.2d 507, 514 (Ind. 2006). Under Florida law, on the other hand, in certain instances "intent may be inferred by the pre-contract and post-contract actions of the parties." Steadfast Ins. v. Corp. Prot. Sec. Grp., 554 F. Supp. 2d 1335, 1338 (S.D. Fla. 2008).

Finally, a claim for unjust enrichment under Indiana law requires a showing that the plaintiff "rendered a benefit to the defendant at the defendant's express or implied request, that the plaintiff expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust." Reed v. Reid, 980 N.E.2d 277, 296 (Ind. 2012). Florida law, in contrast, lacks the "request" element but requires that the "defendant voluntarily accepted and retained the benefit" and that the benefit conferred "be a direct benefit." Johnson v. Catamaran Health, 687 F. App'x 825, 830 (11th Cir. 2017).

**2. Applicable Law For Plaintiff's Fraudulent Concealment Claim**

Indiana applies its choice of law rules for torts to claims involving fraud. See Eby v. Borg-Warner, 455 N.E.2d 623, 626 (Ind. Ct. App. 1983). In such cases, the substantive law of the "place of the tort" (i.e., the state "where the last event necessary to give rise to liability occurred") applies. Castelli v. Steele, 700 F. Supp. 449, 452 (S.D. Ind. 1988). This is typically the place of injury. See id.

4

In this case, Florida law appears to govern Plaintiff's fraudulent concealment claim. <u>See</u> <u>Castelli</u>, 700 F. Supp. at 452. Plaintiff alleges he sustained head injuries during practices and games while playing football at the University of Florida from 1994 to 1996.[4] <u>See</u> Compl. ¶¶ 78, 81. Florida also has significant connections to this legal action. <u>See</u> <u>id.</u> at <u>passim</u>; <u>see also</u> <u>Norris v. Myers Spring</u>, 2017 WL 4684611, *3 (N.D. Ind. 2017) (noting, in finding Pennsylvania law applicable, that "[i]t wasn't merely fortuitous that the injury occurred in Pennsylvania").

### 3. Applicable Law For Plaintiff's Contract And Unjust Enrichment Claims

For contract claims, Indiana's choice of law rules "call[] for applying the law of the forum with the most intimate contacts to the facts." <u>Hartford</u>, 690 N.E.2d at 291. The same rule also governs claims for unjust enrichment. <u>See</u> <u>Lawrence Wholesale v. Nicholson</u>, 2015 WL 1038001, *2-4 (S.D. Ind. 2015). In evaluating the forum with the most intimate contacts, Indiana courts take into account (1) "the place of contracting," (2) "the place of negotiation of the contract," (3) "the place of performance," (4) "the location of the subject matter of the contract" and (5) "the domicil[e], residence, nationality, place of incorporation and place of business of the parties." <u>Hartford</u>, 690 N.E.2d at 291. As set forth below, these factors favor the application of Florida law here. <u>See</u> disc. <u>infra</u> at 5-7.

The first factor (<u>i.e.</u>, the alleged place of contracting) favors the application of Florida law. Indiana courts define the place of contracting as the place where the last act necessary to make a binding contract occurred. <u>See</u> <u>Nat'l Union Fire Ins. v. Standard Fusee</u>, 940 N.E.2d 810, 817 n.6 (Ind. 2010). In this case, the Complaint does not allege where the last act necessary to

---

[4] As would be true for any member of the proposed class who claims to have suffered injury, it is quite possible that any concussion Plaintiff claims to have sustained occurred at an away game and outside the State of Florida. <u>See</u>, <u>e.g.</u>, Ex. 1 hereto (University of Florida schedule for 1995). This would be especially problematic for a member of the proposed class who only sustained one concussion at an away game outside the State of Florida, requiring individualized inquiries for each class member. <u>See</u> <u>In re NCAA</u>, 314 F.R.D. 580, 595 (N.D. Ill. 2016) (discussing how the application of different law to the claims of individual class members raises predominance and manageability issues). In terms of Plaintiff's individual claims, however, and given the fact that Plaintiff claims to have sustained "repetitive" concussive hits, the application of Florida law would be appropriate. <u>See</u> Compl. ¶ 81; <u>Castelli</u>, 700 F. Supp. at 452.

complete any contracts occurred (raising obvious questions whether there actually were any contracts), but the facts alleged clearly point towards Florida.[5]  See, e.g., Compl. ¶ 130.

The vagueness of the Complaint makes the second factor indeterminate.  See generally Compl. at passim.  Plaintiff does not allege that any negotiation preceded these contracts, let alone where such negotiation would have occurred.  See id.  In any event, however, this factor is "of less importance when there is no one single place of negotiation and agreement, as, for example, when the parties do not meet but rather conduct their negotiations from separate states."  Am. Emp'rs Ins. v. Coachmen, 838 N.E.2d 1172, 1179 (Ind. Ct. App. 2005).

The third (and for this case) most important factor -- the place of performance -- points in favor of Florida.  See Interleda v. Zhongshan Broad, 2015 WL 1310724, *3-5 (N.D. Ind. 2015) (finding Indiana law applicable where contract "contemplated [Indiana] to be the location where a predominant portion of the services/performance was to take place" and where party "actually did perform a substantial portion of the services in Indiana").  In this case, Plaintiff alleges that he performed under the contract by playing football at the University of Florida, an NCAA member institution located, of course, in Florida.  See Compl. ¶¶ 18, 120, 124, 130.  Likewise, Florida is where the NCAA purportedly failed to deliver on its promise "to perform certain services and functions."  See id. ¶¶ 119, 121, 129, 131, 136, 138.  In addition, for the third-party beneficiary claim, Florida is naturally where the University of Florida would "abide by the applicable NCAA rules and regulations."  See id. ¶ 136.

To the extent applicable, the fourth factor -- the location of the subject matter of the contract -- also favors the application of Florida law.  This factor generally applies to contracts that deal with goods or specific things rather than a contract for services, which Plaintiff alleges

---

[5] The lack of detail in the Complaint in terms of contract formation and the details of the alleged contract or contracts is, of course, in tension with Fed. R. Civ. P. 8 and Twombly, but this lack of essential detail cannot be used to obscure the lack of viability of the claims at issue.  See Bell Atl. v. Twombly, 550 U.S. 544, 545 (2007) (requiring "allegations plausibly suggesting (not merely consistent with) agreement" under Fed. R. Civ. P. 8).

here.  See Compl. ¶ 119; Interleda, 2015 WL 1310724, *4.  Where courts have applied this factor to a contract for services, however, they have found it to be the same as the place of performance.  See, e.g., Diesel Serv. v. AMBAC, 961 F.2d 635, 641 (7th Cir. 1992), overruled on other grounds by Generac v. Caterpillar, 172 F.3d 971, 974-75 (7th Cir. 1999).

The fifth factor -- domicile, residence, etc. -- also favors the application of Florida law.  Plaintiff resided in Florida at the University of Florida during the relevant period.  See Compl. ¶ 78; Eby, 455 N.E.2d at 626 (citing fact that party resided in Indiana during relevant period as justification for the application of Indiana law under Indiana choice of law rules).[6]  Moreover, while the NCAA is an unincorporated association, its most relevant member institution to this litigation (i.e., the University of Florida) is located in Florida.  See Compl. ¶¶ 11, 18.

As the foregoing analysis illustrates, Florida appears to have the most "intimate contacts to the facts" bearing on Plaintiff's individual claims.  See Hartford, 690 N.E.2d at 291.  Accordingly, this Court should apply Florida law to Plaintiff's fraudulent concealment, contract and unjust enrichment claims.  See id.

## B. Legal Standard

In reviewing a motion to dismiss under Fed. R. Civ. P. 12, "well-pled facts are taken as true and viewed in a light most favorable to the plaintiff," but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Camasta v. Jos. A. Bank, 761 F.3d 732, 736 (7th Cir. 2014).  Indeed, a complaint must "plausibly give rise to an entitlement of relief."  In re Test. Repl. Therapy, 159 F. Supp. 3d 898, 909 (N.D. Ill. 2016); see also Twombly, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  If the allegations in a complaint fail to raise the possibility that a plaintiff has a right to relief above the "speculative level," a plaintiff pleads himself or herself out of court.

---

[6] The University of Florida is also, purportedly, a party to a contract with the NCAA under which Plaintiff claims third-party beneficiary status.  See Compl. ¶¶ 135, 137.

Doe v. Arlington Hts., 782 F.3d 911, 914 (7th Cir. 2015) ("[P]lead[ing] facts that are merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility.").

As discussed more fully below, Plaintiff's fraudulent concealment, contract and unjust enrichment claims against the NCAA do not and cannot possibly cross "the line from conceivable to plausible." See Twombly, 550 U.S. at 570. Plaintiff fails to (and cannot) allege the required elements of the claims asserted in Counts II, III, IV, V and VI of the Complaint, and therefore, those counts should be dismissed. See disc. infra at 8-15.

### C. Plaintiff's Fraudulent Concealment Claim Should Be Dismissed

Plaintiff's fraudulent concealment claim should be dismissed for two separate reasons. First, Plaintiff has not adequately pled this claim under Fed. R. Civ. P. 9(b). See disc. infra at 8-9. Second, the claim is barred by the Florida statute of repose. See disc. infra at 10.

#### 1. Plaintiff Fails To Plead His Fraudulent Concealment Claim With Sufficient Particularity

A claim for fraudulent concealment under Florida law consists of five elements: the defendant (1) "concealed or failed to disclose a material fact," (2) "knew or should have known the material fact should be disclosed," (3) "knew [its] concealment of or failure to disclose the material fact would induce the plaintiff[] to act," (4) "had a duty to disclose the material fact" and (5) the plaintiff "detrimentally relied on the misinformation." Hess, 175 So.3d at 691. Fed. R. Civ. P. 9(b), however, imposes a heightened pleading standard on claims sounding in fraud, requiring Plaintiff to plead "(1) precisely . . . what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." Aprigliano v. Am. Honda, 979 F. Supp. 2d 1331, 1342 (S.D. Fla. 2013). In other words, "the complaint must describe the who, what, when, where, and how of the fraud." Publications Int'l v. Mindtree,

2014 WL 3687316, *2 (N.D. Ill. 2014).[7]  As set forth below, the Complaint is deficient, because it lacks these basic details.  See disc. infra at 9.

The Complaint fails to allege who specifically at the NCAA concealed information from Plaintiff, as well as when, where and how the fraud took place.  See Compl. ¶¶ 107-16.  Indeed, Plaintiff does not identify any individuals at the NCAA who concealed information or even a single interaction between Plaintiff and the NCAA, despite summarily claiming that Plaintiff looked to the NCAA for guidance on head injuries.  See Compl. at passim; Publications Int'l, 2014 WL 3687316, *6 (dismissing complaint where plaintiff failed to identify "which [of defendant's] employees allegedly concealed . . . information").  Even worse, Plaintiff fails to allege what specifically the NCAA concealed -- opting instead to impermissibly "lump" both Defendants together into his allegations.  See, e.g., Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990) ("A complaint that attributes misrepresentations to all defendants, lumped together for pleading purposes, generally is insufficient.").[8]  These deficiencies, however, render the pleading insufficient as a matter of law.  See Heuer v. Nissan, 2017 WL 3475063, *4 (S.D. Fla. 2017) (dismissing complaint where "the Court [was] left to speculate as to how exactly [defendant] was actively and willfully fraudulent").

---

[7] It is, in turn, well established that the requirements of Fed. R. Civ. P. 9(b) apply to claims of fraudulent concealment, since those claims sound in fraud.  See, e.g., Aprigliano, 979 F. Supp. 2d at 1341-42.

[8] In an attempt to explain what Defendants purportedly concealed, Plaintiff cherry-picks certain studies performed by third parties and alleges that the NCAA "orchestrated an approach" to somehow conceal the results of those public studies.  See Compl. ¶¶ 45-64, 108-10.  Such bare and conclusory allegations, however, do not satisfy the requirements of Fed. R. Civ. P. 9(b).  Cf. Pirelli v. Walgreen, 631 F.3d 436, 443 (7th Cir. 2011) (dismissing complaint where plaintiff relied "on the ground that other people have sued [defendant]," because it did "not provide much in the way of plausible corroboration").  Casting further doubt on this claim, many of these studies were published long after Plaintiff finished playing football in 1996.  See Compl. ¶¶ 45-57.  In addition, even though "[s]tudy after study" purportedly contained the information that the NCAA supposedly concealed, Plaintiff conspicuously fails to provide any explanation for why he could not have discovered this information from public studies on his own, which, in itself, also warrants dismissal, since information that is publicly available cannot be the basis for a fraudulent concealment claim as a matter of law.  See, e.g., Greenberg v. Miami Children's Hosp., 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) (dismissing fraudulent concealment claim where plaintiffs failed to plausibly allege that they could not have discovered the information with reasonable diligence); JMR Sales v. MMC Elecs., 2002 WL 31269612, *3 (N.D. Ill. 2002).

### 2. The Statute Of Repose Also Bars Plaintiff's Fraudulent Concealment Claim

In Florida, fraud claims are subject to at twelve-year statute of repose. See Fla. Stat. Ann. § 95.031(2); Hess, 175 So.3d at 696 (applying twelve-year statute of repose to fraudulent concealment claim). "[S]tatutes of repose bar actions by setting a time limit within which an action must be filed as measured from a specified act, after which time the cause of action is extinguished." Hess, 175 So. 3d at 695. The "defendant's last act or omission triggers" the statute of repose, and "[i]f the commission of the alleged fraud does not take place within the statute of repose period, then the fraud claim is extinguished." Id. at 696, 698. The twelve-year period cannot be tolled. See id. at 696.

In this case, the applicable statute of repose bars Plaintiff's claim, because the alleged concealment took place from 1994 to 1996, yet Plaintiff did not file this suit until twenty years later (i.e., in 2016). See Compl. ¶¶ 78, 107-116. In particular, Plaintiff alleges the purpose of this fraud was "to induce a false belief that [he] . . . should continue to play football and should not be prevented from playing football after a concussion." See id. ¶ 111. Plaintiff does not allege, however, that the NCAA concealed a single fact from him after he finished playing football at the University of Florida in 1996, nor could he plausibly do so. See id. at passim. Thus, the Florida statute of repose for fraud claims bars Count II. See Hess, 175 So.3d at 696, 698.

### D. Plaintiff's Express Contract Claim Should Also Be Dismissed

A breach of express contract claim has three elements under Florida law: "(1) a valid contract; (2) a material breach; and (3) damages." Friedman v. N.Y. Life Ins., 985 So.2d 56, 58 (Fla. Dist. Ct. App. 2008). There must, of course, be allegations bearing on offer and acceptance to satisfy the first element. See, e.g., Jovine, 795 F. Supp. 2d at 1341 (dismissing breach of contract claim where Plaintiff "allege[d] no facts that show one party made an offer to the other, let alone that the other party accepted the offer"). The "mere recitation" of an element, however,

is <u>not</u> enough to save it from dismissal for failure to state a claim. <u>See</u>, <u>e.g.</u>, <u>Bissessur v. Ind. Univ.</u>, 581 F.3d 599, 603-04 (7th Cir. 2009).

Plaintiff's pleading is deficient in this regard in at least two respects. <u>First</u>, Plaintiff merely recites that he entered into a contract with the NCAA. <u>See</u> Compl. ¶ 118 ("Plaintiff was required to, and did, enter into a contract with the NCAA").[9] This is, however, "a legal conclusion," and Plaintiff makes it without alleging facts from which that conclusion may be drawn. <u>See</u> <u>Napoli v. Fashion Concepts</u>, 2012 WL 12862817, *1 (S.D. Fla. 2012).[10] <u>Second</u>, Plaintiff omits any allegations relating to offer and acceptance. <u>See</u> Compl. ¶¶ 118, 122. But this failure is equally fatal to Plaintiff's claim. <u>See</u> <u>Jovine</u>, 795 F. Supp. at 1341.

In an effort to obscure the shortcomings of his pleading, Plaintiff includes additional vague and conclusory allegations. None of those allegations, however, are adequate to save Count III from dismissal. For example, Plaintiff alleges that the "NCAA promised to perform certain services and functions." <u>See</u> Compl. ¶ 119. But the referenced services and functions are not in any actual contract and are, instead, just statements from the NCAA's Constitution, as is apparent from elsewhere in the Complaint. <u>Compare</u> <u>id.</u>, <u>with</u> <u>id.</u> ¶ 24. Indeed, Plaintiff never alleges (nor could he) that the NCAA intended for its statements in its Constitution to bind it contractually with Plaintiff, nor does Plaintiff allege facts that demonstrate how statements from

---

[9] The Complaint leaves uncertain whether the "contract" alluded to in Paragraph 118 and the "written agreement" referenced in Paragraph 122 are one and the same. <u>See</u> Compl. ¶¶ 118-26. Whether Plaintiff means to assert one contract or two, however, his allegations concerning any contract's existence are conclusory and insufficient. <u>See</u> <u>Jovine</u>, 795 F. Supp. 2d at 1341. Additionally, even if the "written agreement" is a separate contract, Plaintiff has not pled that the NCAA breached that agreement or, for that matter, what obligations the NCAA had under that agreement. <u>See</u> Compl. ¶¶ 122-25.

[10] Even if Indiana law applied, this same shortcoming would remain fatal to each of Plaintiff's contract claims. <u>See</u> <u>Remy v. Tecnomatic</u>, 2014 WL 2882855, *10 (S.D. Ind. 2014) (holding that "conclusory allegations" that defendants "ratified their acceptance" was "clearly inadequate"); <u>see also</u> <u>Thomas v. UBS</u>, 706 F.3d 846, 852-53 (7th Cir. 2013). Plaintiff's implied contract claim would suffer from the further defect that it lacks any facts concerning the NCAA's assent. <u>See</u> <u>Wakley</u>, 2017 WL 1880814, *3. And Plaintiff's third-party beneficiary claim would separately warrant dismissal, because Plaintiff does not cite to any contract, but rather to other materials to show intent to benefit him. <u>See</u> Compl. ¶ 119; <u>Tucker v. Tom Raper</u>, 81 N.E.3d 1088, 1091-92 (Ind. Ct. App. 2017)..

the NCAA's Constitution could plausibly supply terms for a binding contract between the NCAA and him. <u>See</u> Compl. at <u>passim</u>. Because Plaintiff has inadequately pled the existence of a contract, Plaintiff has failed to state an express contract claim, and this claim should be dismissed. <u>See</u> disc. <u>supra</u> at 10-12.

### E. Plaintiff's Implied Contract Claim Should Also Be Dismissed

Anticipating his inability to establish an express contract, Plaintiff attempts to bring an alternative claim for breach of implied contract in Count IV. <u>See</u> Compl. ¶¶ 127-33. But this claim (like Plaintiff's express contract claim) suffers from deficient pleading. Under Florida law, a plaintiff must allege "the elements of a traditional breach of contract claim" in order to state a claim for breach of implied contract. <u>Shaffer</u>, 2017 WL 3065222, *3. An implied contract differs from an express contract only in that the mutual assent necessary to form it can be inferred "from the parties' conduct, not solely from their words." <u>See</u> <u>id.</u>

In this case, Plaintiff's claim relies on defective pleading, similar to that afflicting his breach of express contract claim. <u>See</u> disc. <u>supra</u> at 10-12. <u>First</u>, Plaintiff asserts as fact that an implied contract existed between the NCAA and him, but Plaintiff does not allege facts that would support such a conclusion. <u>See</u> Compl. ¶ 128. For example, the Complaint says nothing about any offer from the NCAA. <u>Cf.</u> <u>Kunkler v. Fort Laud. Hous. Auth.</u>, 764 F. Supp. 171, 175-76 (S.D. Fla. 1991) (dismissing implied contract claim where plaintiff "stated no facts indicating an offer, acceptance or consideration"). <u>Second</u>, Plaintiff alleges no facts bearing on the NCAA's assent to any implied contract with Plaintiff. <u>Cf.</u> <u>Monahan v. WHM</u>, 2010 WL 11504336, *5 (S.D. Fla. 2010) (finding plaintiffs failed to state an implied contract claim where plaintiffs "failed to allege conduct by the [d]efendants that would indicate assent"). These shortcomings, however, warrant dismissal of Plaintiff's implied contract claim. <u>See</u> <u>id.</u>

### F. Plaintiff's Third-Party Beneficiary Claim Should Also Be Dismissed

In seemingly further recognition that Plaintiff had no contract with the NCAA, Plaintiff alleges that he was the intended third-party beneficiary of a contract between the NCAA and

University of Florida and that the NCAA somehow breached that contract.  See Compl. ¶¶ 135, 137-38.  This claim, however, fares no better than his other contract claims.  See disc. infra at 13-14.

Under Florida law, a plaintiff must allege the following in order to state a third-party beneficiary claim:

> (1) the existence of a contract in which plaintiff is not a party, (2) an intent, either expressed by the parties, or in the provisions of the contract, that the contract primarily and directly benefit the plaintiff, (3) breach of that contract by at least one of the parties, and (4) damages to the plaintiff resulting from that breach.

Ash v. Royal Carib., 2014 WL 6682514, *9 (S.D. Fla. 2014).  Critically, there must be evidence that both contracting parties "actually and expressly intended to benefit the third party."  Rebman v. Follett, 248 F.R.D. 624, 631 (M.D. Fla. 2008).  A court, however, should only "consider extrinsic evidence of the [contracting] parties' intent" if their intent "is not clear from the contract."  See id.  In this case, Plaintiff has inadequately pled the first and second elements of this claim.  See disc. infra at 13-14.

First, as with Plaintiff's other contract claims, Plaintiff once again matter-of-factly asserts that a "contract existed" but provides no factual allegations that would support this assertion. See Compl. ¶ 135.  This conclusory allegation, however, is insufficient for purposes of properly alleging the existence of a contract for the same reasons Plaintiff's conclusory allegations regarding the existence of a contract in his other contract claims are deficient.  See disc. supra at 10-12.  Simply put, a party does not properly plead the existence of a contract by nakedly asserting that a contract existed, as Plaintiff has done here.  See, e.g., Jovine, 795 F. Supp. 2d at 1341.

Second, Plaintiff's pleading of "intent" is also insufficient, given Plaintiff's assertion that this intent "can be found in . . . the NCAA's rules and regulations" and "stated purpose and principles."  See Compl. ¶ 137.  This vague claim "fails to allege any facts showing that [the NCAA and University of Florida] clearly and specifically expressed their intent for the contract

to benefit Plaintiff." [11]  See Aronson v. Celebrity Cruises, 30 F. Supp. 3d 1379, 1398 (S.D. Fla. 2014) (finding allegation that contract "clearly manifested" intent to benefit Plaintiff "by requiring [contracting party] to exercise reasonable care" was "far too generalized to support a third-party beneficiary claim").  In fact, the NCAA's rules and regulations and stated purposes and principles reveal absolutely nothing about the intent of the University of Florida to contract. Cf. Rebman, 248 F.R.D. at 630 (denying class certification where plaintiffs failed to show that "both [contracting parties] actually and expressly intended" to benefit plaintiffs).

### G. Plaintiff's Unjust Enrichment Claim Should Also Be Dismissed

In a last-ditch effort to manufacture a contractual theory of recovery, Plaintiff claims that the NCAA has been unjustly enriched by the revenue it receives "from the collegiate football played by student athletes."  See Compl. ¶¶ 142-45.  This claim, however, is also not viable. [12]

To state a claim for unjust enrichment under Florida law, "a plaintiff must allege that: (1) plaintiff conferred a benefit on the defendant; (2) defendant voluntarily accepted and retained the benefit; and (3) it would be inequitable for the defendant to retain the benefit without paying the value of the benefit to plaintiff."  Johnson, 687 F. App'x at 830.  "[T]he benefit conferred on the defendant must," however, "be a direct benefit."  Id.  For example, in Johnson, the plaintiffs claimed to have "conferred a benefit on [an insurance underwriter] by paying membership fees to [plaintiffs' insurer], who in turn paid premiums to [the underwriter]."  Id.  But the Eleventh Circuit affirmed the dismissal of the plaintiffs' unjust enrichment claim in Johnson, finding they could not "satisfy the first element of an unjust enrichment case," because "at best" they only conferred "an indirect benefit on [the underwriter]."  Id.

---

[11] Indeed, the Ninth Circuit has held that the "Constitution, Bylaws and Articles" of the Pac-10 Conference (now the Pac-12) were insufficient "evidence that the [Pac-10 and member schools] intended to create a contractual obligation" for the benefit of Pac-10 football players.  Hairston v. Pac-10, 101 F.3d 1315, 1320 (9th Cir. 1996).

[12] Plaintiff's unjust enrichment claim would also be subject to dismissal under Indiana law, because Plaintiff makes no allegation that the NCAA "explicitly or implicitly requested a benefit from" Plaintiff. Wash. Frontier League Baseball v. Zimmerman, 2015 WL 7300555, *10 (S.D. Ind. 2015).

In this case (as in <u>Johnson</u>), Plaintiff cannot satisfy the first element, because Plaintiff did not directly confer the benefit he seeks recompense for:  the NCAA's revenues.  <u>See</u> Compl. ¶¶ 142-45.  As the Complaint makes clear, those revenues come from "broadcasting, merchandising agreements, and ticket sales."  <u>See id.</u> ¶ 142.  Broadcasters, merchandisers and ticket-buyers -- not Plaintiff -- thus directly conferred the benefit on the NCAA.  <u>See id.</u>  That "the collegiate football played by student-athletes" played a role in the NCAA's revenue does not, however, change the fact that Plaintiff did not <u>directly</u> confer a benefit on the NCAA.  <u>See Johnson</u>, 687 F. App'x at 830.  Accordingly, this claim should be dismissed, because Plaintiff seeks to recover for a benefit he has not directly conferred to the NCAA.  <u>See id.</u>

### III.    CONCLUSION

For the reasons stated herein, the NCAA respectfully requests the Court enter an order dismissing with prejudice Counts II, III, IV, V and VI of Plaintiff's Complaint.  The NCAA further requests any additional relief this Court deems appropriate.

Dated: December 14, 2017                       Respectfully submitted,

                                                                 */s/ Mark S. Mester*
                                                                 Mark S. Mester, Lead Counsel
                                                                 Defendant National Collegiate Athletic Association

Mark S. Mester
    mark.mester@lw.com
Kathleen P. Lally
    kathleen.lally@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, Illinois 60611
Telephone:  (312) 876-7700
Facsimile:  (312) 993-9767

## CERTIFICATE OF SERVICE

I, Mark S. Mester, certify that, on December 14, 2017, a true and correct copy of the

foregoing MEMORANDUM OF LAW IN SUPPORT OF THE NCAA'S MOTION TO

DISMISS COUNTS II, III, IV, V AND VI OF PLAINTIFF'S COMPLAINT was filed through

the CM/ECF system, which caused notice to be sent to all counsel of record.

> */s/ Mark S. Mester*
> Mark S. Mester
>   mark.mester@lw.com
> LATHAM & WATKINS LLP
> 330 North Wabash Avenue, Suite 2800
> Chicago, Illinois, 60611
> Telephone:  (312) 876-7700
> Facsimile:  (312) 993-9767

# EXHIBIT 1

Case: 1:16-cv-09980 Document #: 30 Filed: 12/14/17 Page 24 of 24 PageID #:184

# Florida Gators

## 1995 Football Schedule

**Current Record**

| Overall | Pct. | Conf | Pct. | Streak | Home | Away | Neutral |
|---|---|---|---|---|---|---|---|
| 12 - 1 | .923 | 8 - 0 | 1.000 | L1 | 6 - 0 | 5 - 0 | 1 - 1 |

| Date | Time/Result | Opponent | Location | Home / Away | Conf | Details |
|---|---|---|---|---|---|---|
| **9/2/1995** | **W 45-21** | **Houston** | **Gainesville, FL** | **H** | | **Details** |
| 9/9/1995 | W 42-7 | Kentucky | Lexington, KY | A | * | Details |
| **9/16/1995** | **W 62-37** | **Tennessee** | **Gainesville, FL** | **H** | * | **Details** |
| **9/30/1995** | **W 28-10** | **Ole Miss** | **Gainesville, FL** | **H** | * | **Details** |
| 10/7/1995 | W 28-10 | LSU | Baton Rouge, LA | A | * | Details |
| 10/14/1995 | W 49-38 | Auburn | Auburn, AL | A | * | Details |
| 10/28/1995 | W 52-17 | Georgia | Athens, GA | A | * | Details |
| **11/4/1995** | **W 58-20** | **Northern Illinois** | **Gainesville, FL** | **H** | | **Details** |
| 11/11/1995 | W 63-7 | South Carolina | Columbia, SC | A | * | Details |
| **11/18/1995** | **W 38-7** | **Vanderbilt** | **Gainesville, FL** | **H** | * | **Details** |
| **11/25/1995** | **W 35-24** | **Florida State** | **Gainesville, FL** | **H** | | **Details** |
| *12/2/1995* | *W 34-3* | *Arkansas* | *Atlanta, GA* | *N* | | *Details* |
| *1/2/1996* | *L 24-62* | *Nebraska* | *Tempe, AZ* | *N* | | *Details* |

Copyright © 2017 Florida Gators